Adolfo Laborde Besosa, demandante y recurrido, *v.* Eastern Sugar Associates (*A trust*) y su actual Presidente Manuel A. Del Valle, demandada y recurrente.

Número 11833.

*Sometido:* 1 de noviembre de 1956. *Resuelto:* 11 de agosto de 1959.

*Fiddler, González, Guillemard & Negrón Rodríguez, (Fiddler, González & Nido* y *Carlos J. Faure,* en el alegato), abogados de la recurrente; *Vicente Géigel Polanco,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Este caso podría considerarse como una reconsideración extensa de todas las controversias que ha originado en Puerto Rico el contrato de trabajo aplicable a nuestra industria azucarera. Entre las controversias planteadas están: (1) la definición de lo que constituye un ejecutivo de acuerdo con nuestra ley local; (2) la aplicación de la exención de elaboración (*processing*) que contiene la Ley federal; (3) la aplicación de la defensa de impedimento (*estoppel*) a un contrato de trabajo tácitamente aceptado por el empleado; (4) la nulidad de un contrato de trabajo tipo Belo; (5) la prescripción de la acción para recobrar salarios bajo la sec. 6 de la Ley de Portal a Portal; (6) la inconstitucionalidad del art. 1867 del Código Civil de Puerto Rico, en todo lo referente a la prescripción de la acción para recobrar salarios; (7) los límites de una semana regular del trabajo para la industria azucarera; (8) las bases estatutarias para la computación de lo debido por salarios.

El primer fundamento es uno tanto de hecho como de derecho. La ilustrada Sala sentenciadora llegó a la conclusión que el querellante trabajó para la querellada bajo distintos tipos de sueldo que fluctuaban de acuerdo con las horas trabajadas y que sólo ocasionalmente tuvo uno o dos obreros bajo sus órdenes, cuando la reparación de las líneas telefónicas así lo exigía.

Recientemente hemos resuelto que la naturaleza del trabajo que desempeña el empleado constituye el criterio principal para determinar si en verdad ejerce funciones ejecutivas: *Sierra* v. *Mario Mercado e Hijos*, 81 D.P.R. 314 (Saldaña), (1959), cita precisa a la pág. 322. El empleado describe su tarea como una para la "reparación de los teléfonos" (t. 15).

Un examen detenido de toda la prueba que tuvo ante sí la ilustrada Sala sentenciadora nos convence que el querellante no desempeñó otra tarea que no fuera la de un simple celador de líneas del sistema telefónico privado que operaba la querellada. La conclusión de la ilustrada Sala sentenciadora, en el sentido que sólo ocasionalmente el querellante tuvo bajo sus órdenes uno o dos obreros manuales, en casos de averías mayores, está ampliamente sostenida por la prueba. Siendo esto así, falta la característica de la "habitualidad", tan necesaria a la descripción de lo que constituye una tarea ejecutiva. También hay prueba de que en algunas ocasiones, a pesar del alegado "contrato de garantía mínima de compensación semanal"—el contrato en sí ya es un fuerte indicio de un sueldo que podía fluctuar de acuerdo con las horas trabajadas—el querellante recibió paga por horas extras (t. 26).

Siendo la conclusión de la ilustrada Sala sentenciadora que el querellante no era un ejecutivo, conclusión aceptada como correcta por este Tribunal, no tenemos que detenernos a considerar cómo cambiaría la causa de acción dentro de las diversas disposiciones referentes a un ejecutivo, anteriores a la promulgación del Reglamento núm. 13 de la Junta de Salario Mínimo vigente desde el 15 de enero de 1952.

■ En cuanto a si es aplicable a este caso la exención de elaboración (*processing*) dispuesta por la sec. 7 (*c*) de la Ley de Normas Razonables del Trabajo, un estudio comparativo que hemos hecho de las disposiciones de la Ley de Normas Razonables del Trabajo y de las disposiciones de nuestras distintas leyes locales sobre el contrato de trabajo, nos ha convencido de que nuestras leyes locales resultan más beneficiosas que el estatuto federal. Siendo esto así, de acuerdo

con la sec. 18 de la propia Ley de Normas Razonables del Trabajo, lo que debemos aplicar son nuestras leyes locales, en este caso la Ley núm. 49 de 1935, el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico armonizado con las disposiciones de la Ley núm. 289 de 1946 y la Ley núm. 379 de 1948: *Olazagasti* v. *Eastern Sugar Associates*, 79 D.P.R. 93 (Marrero) (1956), cita precisa a las págs. 103–114. La Legislatura de Puerto Rico no ha creído prudente establecer la total exención para la fase industrial de nuestra industria azucarera que contiene la Ley federal, disponiendo progresivamente una tarea diaria y semanal menos agotadora para los negocios exemptuados por la Ley federal. Hay abundantes razones climatológicas, sociales, humanas que justifican la diferenciación si tal justificación fuera necesaria.

■ En cuanto a si en este caso debe operar la defensa del impedimento, por haber el querellante aceptado tácitamente los beneficios del contrato propuesto por la querellada, la prueba es clara en el sentido de que el querellante no aceptó el contrato tipo Belo. Pero aun si lo hubiese aceptado, siendo algunas de las condiciones del contrato propuesto contrarias a ciertas disposiciones legales de nuestras leyes, tales condiciones resultarían nulas. En Puerto Rico, cualquier disposición contraria a una norma legislativa no produce efecto alguno entre las partes, y el hecho de haber intervenido el querellante en el otorgamiento del mismo, no le impide solicitar la nulidad de tales condiciones: *Monserrate* v. *Lopés*, 80 D.P.R. 491 (1958), cita precisa a las págs. 501 *in fine* y 502.

■■ En cuanto a la aplicación de la sec. 6 de la Ley de Portal a Portal, nada tenemos que añadir a lo resuelto por nosotros en el caso de *Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304 (Snyder), (1953), (primera reconsideración), cita precisa a la pág. 328, confirmado en *Eastern Sugar Associates* v. *Peña*, 222 F.2d 934 (Maris), (1955), cita precisa a la pág. 936. En ambas decisiones se deja establecido que

cuando se trata de una reclamación bajo una ley local, el término de prescripción es una cuestión de ley local, y por lo tanto, no se aplica la sec. 6 de la Ley de Portal a Portal.

No creemos que el art. 1867 de nuestro Código Civil resulte inconstitucional al aplicarse a un contrato de trabajo incumplido por el patrono. La prescripción de acciones es una simple cuestión de discernimiento legislativo dirigido al saneamiento de una economía. Estando el contrato de trabajo tan intervenido por el interés público, es natural que la Legislatura de Puerto Rico haya decidido mantener en todo su vigor la teoría prescriptiva de nuestro Código Civil que dispone que empiece a correr dicha prescripción desde el momento en que el obrero, habiendo cesado en su empleo, no tiene que temer las represalias de su patrono por cualquier reclamación que pueda hacer sobre su contrato de trabajo.

En cuanto a la extensión de la semana regular de trabajo para la industria azucarera, la misma varía de acuerdo con el período de tiempo cubierto por la reclamación. Si la querella se refiere al período comprendido desde el 8 de abril de 1935, fecha en que entró en vigor la Ley núm. 49 de 1935, hasta el 29 de abril de 1943, fecha en que entró en vigor el Decreto Mandatorio núm. 3, la semana regular de trabajo no tiene límite durante la zafra o durante el tiempo muerto.

Si la querella se refiere al período comprendido desde el 29 de abril de 1943, fecha en que entró en vigor el Decreto Mandatorio núm. 3, hasta el 9 de abril de 1946, fecha en que entró en vigor la Ley núm. 289 fijando un día de descanso por cada seis días de trabajo, la semana regular de trabajo no tiene límite en cuanto a la zafra y tiene un límite de cuarenta horas en cuanto al tiempo muerto.

Si la querella se refiere al período comprendido desde el 9 de abril de 1946, fecha en que entró en vigor la Ley núm. 289 fijando un día de descanso por cada seis días de trabajo, hasta el 15 de mayo de 1948, fecha en que entró en vigor la Ley núm. 379 para establecer la jornada de trabajo en Puerto

Rico, la semana regular de trabajo tiene un límite de cuarenta y ocho horas durante el tiempo de zafra y de cuarenta horas durante el tiempo muerto.

Si la querella se refiere al período comprendido desde el 15 de mayo de 1948, fecha en que entró en vigor la Ley núm. 379 para establecer la jornada de trabajo en Puerto Rico, hasta el presente, en cuanto al "tiempo de zafra" se refiere, más que una semana regular de trabajo de cuarenta horas, lo que en realidad existe es un nuevo divisor a base de cuarenta horas para el cómputo de la compensación por horas en exceso de dichas cuarenta horas, como más adelante se dirá. En cuanto al "tiempo muerto", la semana regular de trabajo es de cuarenta horas.

Ese es el resultado que se obtiene armonizando las disposiciones de los apartados B-2(a) y B-2(b) del Decreto Mandatorio núm. 3, con la Ley núm. 289 de 1946 fijando un día de descanso por cada seis días de trabajo y con el art. 5 de la Ley núm. 379 de 1948 para establecer la jornada de trabajo en Puerto Rico.

En el caso de *Peña* v. *Eastern Sugar Associates*, supra, un caso de un empleado no exento por la sec. 7(*c*) de la Ley de Normas Razonables del Trabajo (pág. 322, escolio 10), armonizando el estatuto federal con el art. 5 de la Ley núm. 379 de 1948, llegamos a la conclusión de que la semana regular de trabajo durante la zafra para nuestra industria azucarera era de cuarenta horas (pág. 320 de la opinión). En el caso de *Olazagasti* v. *Eastern Sugar Associates*, 79 D.P.R. 93 (Marrero), (1953), cita precisa a la pág. 105, un caso de un empleado exento por la sec. 7(*c*) de la Ley de Normas Razonables del Trabajo pero sujeto a las disposiciones del art. 5 de la Ley núm. 379 de 1948, llegamos a la conclusión de que la semana regular de trabajo durante la zafra para nuestra industria azucarera era de cuarenta horas.

■ La querella en este caso cubre el período de tiempo comprendido entre el 10 de febrero de 1942 hasta el 30 de junio de 1952.

I. La parte de la reclamación cubierta por la Ley núm. 49 de 1935 de Puerto Rico, en vigor desde el 8 de julio de 1935 hasta el 29 de abril de 1943, fecha en que empezó a regir el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo, la compensación por cualquier hora en exceso de ocho horas diarias, se computa a razón de tipo doble la novena hora y tipo sencillo las horas en exceso de la novena, lo mismo para el tiempo de zafra que para el tiempo muerto. La base para determinar el tipo sencillo se obtiene dividiendo el salario semanal por las horas realmente trabajadas.

II. La parte de la reclamación cubierta por el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico, o sea, desde el 29 de abril de 1943, fecha en que entró en vigor dicho decreto, hasta el 9 de abril de 1946, fecha en que entró en vigor la Ley núm. 289 fijando un día de descanso por cada seis días de trabajo, la compensación por horas extras varía de acuerdo con las disposiciones de los apartados B-2(a) y B-2(b) del decreto.

Si el empleado trabaja en la fase industrial en "tiempo de zafra", está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias.

En este caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por las horas realmente trabajadas. En este caso, el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

Si el empleado trabaja en la fase industrial en "tiempo muerto", está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias y por las disposiciones del apartado B-2(b) en cuanto a las horas semanales.

En el primer caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para deter-

minar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En el segundo caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de cuarenta horas semanales, las cuales le serán compensadas a tiempo y medio. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En ambos casos el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

El efecto del Decreto Mandatorio núm. 3 sobre la Ley núm. 49 de 1935, fue crear un tipo de retribución uniforme para todas las horas trabajadas en exceso de ocho horas diarias.

■ III. La parte de la reclamación cubierta por el Decreto Mandatorio núm. 3 y la Ley núm. 289 de 1946 fijando un día de descanso por cada seis días de trabajo, o sea, desde el 9 de abril de 1946, fecha en que entró en vigor la Ley núm. 289, hasta el 15 de mayo de 1948, fecha en que entró en vigor la Ley núm. 379 para establecer la jornada de trabajo en Puerto Rico, la compensación por horas extras varía de acuerdo con las disposiciones de los apartados B-2(a) y B-2(b) del decreto armonizados con las disposiciones de la Ley núm. 289 de 1946.

Si el empleado trabaja en la fase industrial en "tiempo de zafra" está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias y por las disposiciones de la Ley núm. 289 de 1946, en cuanto al día de descanso provisto para la semana de trabajo.

En el primer caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta y ocho horas. En el segundo caso, la compensación por horas extras cubre todas las horas trabajadas durante el día de descanso, las cuales le serán com-

pensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta y ocho horas. En ambos casos el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

Si el empleado trabaja en la fase industrial en "tiempo muerto" está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias y por las disposiciones del apartado B-2(b) del decreto armonizado con las disposiciones de la Ley núm. 289 de 1946, en cuanto a horas semanales.

En el primer caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En el segundo caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de cuarenta horas semanales durante los primeros seis días de la semana, las cuales le serán compensadas a tiempo y medio, y todas las horas trabajadas durante el día de descanso, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora, tanto para la semana regular de seis días como para el día de descanso, se obtiene dividiendo el salario semanal por cuarenta horas. En los tres casos, el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

El efecto de la Ley núm. 289 de 1946 sobre el Decreto Mandatorio núm. 3, en cuanto a la industria azucarera se refiere, fue crear una semana de trabajo de seis días durante el "tiempo de zafra" y una compensación a tipo doble por las horas trabajadas en el día de descanso. Siendo en ambas disposiciones más beneficiosa la Ley núm. 289 que el decreto, la primera debe prevalecer sobre el segundo, según el apartado c-2 del propio decreto.

■ IV. La parte de la reclamación cubierta por el De-creto Mandatorio núm. 3 y la Ley núm. 379 de 1948 para establecer una jornada de trabajo en Puerto Rico, o sea, desde el 15 de mayo de 1948, fecha en que entró en vigor la Ley núm. 379, hasta el presente, la compensación por horas extras varía de acuerdo con los apartados B-2(a) y B-2(b) del decreto, subsistentes por propia declaración del art. 5 de la Ley núm. 379, armonizados con las disposiciones de dicha Ley núm. 379 de 1948.

Si el empleado trabaja en la fase industrial en "tiempo de zafra" está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias y por las disposiciones de la Ley núm. 289 de 1946 en cuanto al divisor de la semana de trabajo y en cuanto al día de descanso provisto para la semana de trabajo.

En el primer caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para deter-minar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En el segundo caso, la com-pensación por horas extras cubre todas las horas semanales trabajadas en exceso de cuarenta horas durante los seis días regulares de la semana de trabajo, las cuales le serán com-pensadas a tipo sencillo y las horas trabajadas durante el día de descanso, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene divi-diendo el salario semanal por cuarenta horas. En ambos casos el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

Si el empleado trabaja en la fase industrial en "tiempo muerto" está cubierto por las disposiciones del apartado B-2(a) del decreto en cuanto a horas diarias y por las dispo-siciones del apartado B-2(b) del decreto armonizado con las disposiciones de la Ley núm. 289 de 1946 en cuanto a horas semanales.

En el primer caso, la compensación por horas extras cubre todas las horas trabajadas en exceso de ocho horas diarias, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En el segundo caso, la compensación por horas extras cubre todas las horas semanales trabajadas en exceso de cuarenta horas durante los seis días regulares de la semana de trabajo, las cuales le serán compensadas a tiempo y medio y las horas trabajadas durante el día de descanso, las cuales le serán compensadas a tipo doble. La base para determinar el tipo sencillo por hora se obtiene dividiendo el salario semanal por cuarenta horas. En ambos casos el tipo sencillo por hora no será menor que el tipo mínimo establecido por la escala de salarios del apartado B-1 del decreto.

El efecto de la Ley núm. 379 de 1948 sobre el Decreto Mandatorio núm. 3, en cuanto a la industria azucarera se refiere, fue crear un nuevo tipo de compensación por hora durante el tiempo de zafra, conservando la compensación a tipo doble por cualquier hora trabajada durante el día de descanso.

En cuanto a la compensación entre las cuarenta y las cuarenta y ocho horas, durante la zafra, armonizando el *Disponiéndose* del art. 5 de la Ley núm. 379, generalmente aplicable a industrias comprendidas dentro de la Ley de Normas Razonables del Trabajo, no cubiertas por ningún decreto de la Junta de Salario Mínimo de Puerto Rico, con nuestro Decreto Mandatorio núm. 3, expresamente aplicable a la industria azucarera de Puerto Rico, y adoptando los extremos más beneficiosos de ambas disposiciones, llegamos a la conclusión que debíamos utilizar la base de cuarenta horas mejor que como un límite de la semana de trabajo, como un nuevo tipo de compensación por hora, compensando a tipo sencillo las horas trabajadas durante la semana entre cuarenta y cuarenta y ocho horas. Esto permite una semana de trabajo

.más flexible durante el período más premioso de la industria azucarera, sin derrotar la intención legislativa de ninguno de .los estatutos envueltos.

*La sentencia dictada por la ilustrada Sala sentenciadora .será modificada de acuerdo con los resultados de esta opinión y el caso devuelto para que se proceda a calcular de nuevo la .compensación.*