JOSÉ LIMARDO COSTA, EMETERIO LOZADA, LUIS MARTÍNEZ TORRES, ALBERTO LÓPEZ ROSA y ARTURO ANDRÉU, querellantes, apelantes y apelados, v. EASTERN SUGAR ASSOCIATES, ETC., querellada, apelada y apelante.

*Núms.:* 12406, 12719—12722. *Resueltos:* 21 de diciembre de 1961.

*Fiddler, González, Guillemard y Rodríguez (Eduardo Negrón Rodríguez* en el alegato), abogados de la querellada, apelada y apelante; *Vicente Géigel Polanco y Vicente Géigel Lanuza,* abogados de los querellantes, apelantes y apelados.

Sala integrada por el Juez Presidente señor Negrón Fernández como Presidente de Sala y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Eastern Sugar Associates, un fideicomiso dueño de varias centrales azucareras en el centro y la parte este de Puerto Rico, opera desde hace años un departamento de su empresa en Punta Santiago, Humacao, que se dedica a la transportación de caña de azúcar mediante el uso de embar-

caciones desde la Isla de Vieques a Puerto Rico y al embarque para el exterior de azúcar y mieles desde los almacenes de dicho departamento. Desde antes de enero de 1948 los querellantes prestaron servicios en este departamento en distintos menesteres—Limardo y Lozada, como maquinistas de remolcadores; Martínez, como marino; López Rosa, como listero; y Andréu, como encargado de almacén. Hasta el día 16 de febrero de 1956 los servicios de los querellantes fueron compensados a base de un sueldo semanal garantizado que cubría generalmente el pago de 40 horas regulares de labor y 20 horas extras. Dentro de este plan disfrutaban de ciertos beneficios adicionales tales como vacaciones anuales, vacaciones por enfermedad y ausencias del trabajo sin reducción del salario. Además, estaban acogidos al plan de pensiones establecido por la parte querellada para sus empleados.

El 13 de septiembre de 1954 los querellantes iniciaron una reclamación de salarios que comprendía servicios rendidos desde el año 1943. Atacaron la validez de los contratos mediante los cuales se les compensaba a base de un sueldo semanal garantizado que cubría tanto las horas regulares como las extras. En 14 de noviembre de 1955 el Tribunal Superior dictó sentencia favorable a los querellantes, contra la cual se interpuso apelación. Estando pendiente el recurso, (¹) el patrono notificó a los querellantes que debido al fallo judicial que declaraba contrarios a la ley los contratos de compensación mínima semanal y con el propósito de colocarse dentro de las normas fijadas por la Ley Núm. 379 de 15 de mayo de 1948, (²) a partir del día 16

_____

(¹) En 29 de junio de 1960 este Tribunal modificó la sentencia del Tribunal Superior a los únicos efectos de que se procediera a calcular de nuevo la compensación a que tenían derecho los querellantes por las horas extras trabajadas de acuerdo con las normas enunciadas en *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478 (1959). La determinación sobre la ilegalidad de los contratos de trabajo tipo Belo frustrado no fue alterada. *Limardo et al.* v. *Eastern Sugar Associates*, núm. 12037.

(²) El artículo 11 de la Ley Núm. 379, *supra*, 29 L.P.R.A. sec. 280, dispone que "(s)erá nula toda cláusula o estipulación de un contrato de trabajo en que la compensación del empleado se fije en un tipo de salario

de febrero de 1956 continuarían prestando sus servicios a base de un jornal por horas efectivamente trabajadas.

Amparándose en las disposiciones de la sección 19 de la Ley Núm. 8 de 5 de abril de 1941, pág. 303, 29 L.P.R.A. sec. 230, y el artículo 18 de la Ley Núm. 379 de 15 de mayo de 1948, pág. 1255, 29 L.P.R.A. sec. 287, ([3]) los querellantes iniciaron una acción para que se ordenara su reposición como empleados con el mismo sueldo semanal que devengaban anteriormente y reclamando los daños que se les habían causado por el acto de la parte querellada. El Tribunal Superior declaró con lugar las demandas, a pesar de que reconoció que "la querellada no venía obligada a seguir con los querellantes el mismo tipo de contrato que incluía horas extras y horas regulares, porque esto era claramente nulo". Ambas partes apelaron.

La sección 19 de la Ley de Salario Mínimo de 1941, 29 L.P.R.A. sec. 230, ([4]) dispone que:

"Todo patrono que despida, suspenda, rehuse admitir o restituir, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga condiciones de trabajo más onerosas a un empleado o ex empleado suyo, discrimine en cualquier forma o amenace cometer contra él cualquiera de esos actos para evadir el cumplimiento de cualquier decreto o porque dicho empleado o ex empleado se haya querellado, haya ofrecido o prestado testimonio o se disponga a ofrecerlo o prestarlo, en alguna investigación, querella, reclamación, audiencia o procedimiento admi-

---

por día, por semana o por mes; que incluya conjuntamente el pago de las horas regulares y las horas extras de trabajo". Véanse, *Peña* v. *Eastern Sugar Associates*, 75 D.P.R. 304 (1953) confirmado en 222 F.2d 934 (1955); *Olazagasti* v. *Eastern Sugar Associates*, 79 D.P.R. 93 (1956); *Berríos* v. *Eastern Sugar Associates*, 79 D.P.R. 688 (1956); *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478 (1959).

([3]) El artículo 18 de la Ley Núm. 379, supra, no autoriza la iniciación de acción civil contra el patrono "que despida o en cualquier otra forma discrimine contra cualquier empleado porque éste haya incoado o hecho incoar cualquier procedimiento" en reclamación de salarios. Se limita a imponer al patrono penalidades de naturaleza criminal. Cf. *Cardona* v. *Corte*, 62 D.P.R. 61 (1943); *Torres* v. *Perea*, 66 D.P.R. 171 (1946).

([4]) Idéntica sección se incorporó a la Ley de Salario Mínimo de 1956, mediante la sección 24 de la Ley Núm. 96 de 26 de junio de 1956, pág. 623, 29 L.P.R.A. (Supl) sec. 245w.

nistrativo o judicial que se lleve o haya llevado a cabo en relación o para la aplicación de este capítulo o de cualquier decreto, reglamento, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro especial de la Junta de Salario Mínimo, incurrirá en un delito menos grave, y una vez convicto, se le impondrá multa de cien (100) a mil (1,000) dólares, o cárcel por término de un mes a seis meses, o ambas penas a discreción del tribunal.

"Se presumirá que cualquiera de los mencionados actos obedece a la formulación de querella, ofrecimiento o prestación de testimonio, disposición de ofrecerlo o darlo, creencia de que se ofrecerá o prestará, o servicio en la Junta, según sea el caso, cuando el patrono haya realizado el acto antes de transcurrir seis meses desde la terminación de la investigación, querella, reclamación, audiencia o procedimiento, o funciones de la Junta, a menos que demuestre satisfactoriamente que le había manifestado al empleado o ex empleado su propósito, que en verdad tuviera, antes de existir la investigación, querella, reclamación, audiencia o procedimiento, o la propuesta para formar parte de la Junta.

"El patrono deberá reponer en su empleo al trabajador o cesar en la continuación del acto de que se trate. Para obligarlo a cumplir esa obligación, los Tribunales Superiores y de Distrito conocerán concurrentemente de procedimientos sencillos, rápidos y preferentes, en los que se dará oportunidad de ser oídas a las partes interesadas y a la Junta. En dichos procedimientos se investigarán también los daños que el acto haya causado al empleado o ex empleado, a cuyo favor se dictará sentencia por el doble del importe de los daños causados, además de concedérsele costas y una suma razonable, que nunca bajará de cincuenta (50) dólares, para honorarios de abogado." ■

Originalmente, cuando se aprobó en 1941 la Ley de Salario Mínimo, esta sección 19 era una disposición de carácter exclusivamente penal. Se limitaba en su aplicación a los casos de despido o cualquier otra forma de discrimen ejercitada por el patrono contra el empleado "porque crea que dicho empleado o ex empleado puede ofrecer testimonio en cualquier investigación o procedimiento relacionado con la aplicación de la Ley." Como podrá observarse, se dirigía más bien a fomentar la comparecencia de los obreros y

empleados para la prestación de testimonio en los procedimientos relacionados con la fijación de salarios mínimos y el establecimiento de condiciones de trabajo para las distintas industrias o actividades. No es hasta la aprobación de la Ley Núm. 217 de 11 de mayo de 1945 (Leyes, pág. 681) que se amplía considerablemente el ámbito de su aplicación para cubrir expresamente 1) el despido; 2) la suspensión; 3) el rehusar admitir o restituir; 4) la reducción de salario; 5) el rebajar la categoría del empleado; 6) el aumento de las horas de labor; 7) la imposición de condiciones de trabajo más onerosas; 8) o cualquier otra clase de discrimen; 9) o la amenaza de cometer cualquiera de estos actos. Se refiere también específicamente a la imposición de sanciones civiles —reposición en el empleo o cese de la continuación del acto discriminatorio e investigación y resarcimiento de los daños causados al empleado—porque el obrero afectado se haya querellado, haya prestado testimonio o se disponga a ofrecerlo o prestarlo, o porque crea que pueda ofrecerlo o prestarlo(⁵) en alguna investigación, querella, audiencia, reclamación o procedimiento administrativo o *judicial* que se lleve a cabo en relación con la aplicación de la Ley o de cualquier reglamento, decreto, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro de un comité de salario mínimo. ▉

En *Cadilla* v. *Condado Beach Hotel*, 70 D.P.R. 911 (1950) definimos el alcance de la presunción que se establece en dicha sección, y al efecto indicamos que se trataba de una de carácter controvertible; que el reclamante establecía prima facie su caso al presentar prueba sobre la existencia de una reclamación de salarios contra su patrono y el hecho del despido o la comisión del acto discriminatorio antes de expirar el término de seis meses contados a partir de la terminación de la querella o reclamación; y que incumbía entonces al

---

(⁵) Esta disposición sobre la creencia de que el empleado pueda ofrecer o prestar testimonio en determinados procedimientos fue eliminada mediante la Ley Núm. 451 de 14 de mayo de 1947 (Leyes, pág. 951).

patrono demostrar que el despido o acto discriminatorio no había obedecido a la presentación de la reclamación. El tribunal de instancia reconoció el carácter controvertible de la presunción, pero indicó que "la prueba para destruir esta presunción tiene que ser de tal naturaleza que convenza al tribunal de que el cambio del contrato estableciendo condiciones más onerosas rebajando la categoría del empleado, no envuelve en sí un discrimen". Realmente todo lo que se requiere es que el patrono demuestre satisfactoriamente que el cambio en las condiciones de trabajo no constituye una represalia por la iniciación del pleito en reclamación de salarios. En otras palabras, pueden existir circunstancias en que se haya operado un cambio desfavorable al obrero y, sin embargo, no existir causa de acción. La reclamación procede únicamente, repetimos, cuando ello es hijo del propósito de castigar al obrero por haber demandado.

Aunque en el presente caso no se trata de un despido, ya que los querellantes continuaron trabajando para la parte querellada en las mismas labores que desempeñaban antes de la presentación de su reclamación y mientras ésta continuaba pendiente ante los tribunales, podríamos admitir—a los fines de la discusión solamente—que el acto de la querellada al alterar en la forma descrita anteriormente las relaciones obrero-patronales constituye el acto de "rebajar la categoría del empleado". Sin embargo, el balance más racional de la prueba presentada revela claramente que la actuación patronal no respondió al propósito de discriminar contra los obreros por haber éstos interpuesto reclamaciones por horas extras, sino al de cumplir con la disposición de ley que un tribunal de justicia, a instancia de los mismos querellantes, determinó que había sido infringido mediante los contratos anteriores de empleo con garantía de sueldo semanal. Para la fecha en que la querellada descontinuó los contratos de empleo a base de compensación mínima semanal, las sentencias dictadas por el Tribunal Superior

en 14 de noviembre de 1955 a favor de los querellantes por concepto de horas extras eran como sigue:—Limardo, $36,921.66; Lozada, $34,983.74; López Rosa, $5,532.96; Andréu, $15,044.82; Martínez Torres, $20,134.33. Estas sumas se reajustaron posteriormente a tenor con lo resuelto en el caso de *Laborde, supra.* Se trata de un caso en que el patrono meramente ha descontinuado contratos de trabajos ilegales. Tal actuación—por consejo de sus abogados—le evitaba verse expuesto a nuevas reclamaciones si se continuaba compensando a los querellantes mediante la forma que el tribunal había encontrado ser contraria a la ley.

Inusitado énfasis se hace en el hecho de que los reclamantes perdieron ciertos beneficios marginales al ser colocados a trabajar mediante una compensación por hora. Estos aspectos del contrato de trabajo son propios de la discusión para contratación colectiva. A este respecto quedó establecido que el patrono en 16 de febrero de 1956, fecha en que se cambió la norma de empleo, estaba impedido de darle valor o efecto a los convenios colectivos que pudieran estar vigentes ni efectuar prórroga, renovación, modificación o suplemento de los mismos hasta que no mediara una previa certificación de la Junta Federal de Relaciones del Trabajo sobre la unidad contratante apropiada. Por otro lado, lo más justo y razonable es que si el contrato anterior se anuló a instancias de los mismos querellantes para así poder recibir compensación adicional por las horas extras trabajadas, la querellada pueda evitar reclamaciones similares cambiando la norma de empleo.

Se determina la existencia de discrimen por haberse variado la norma de empleo tres meses después de haberse dictado la sentencia favorable a los obreros y por haberse limitado sus efectos a los empleados del Departamento de Playa. En realidad no vemos relación alguna entre el alegado discrimen y el período transcurrido entre la fecha de la sentencia y la de la implantación del nuevo contrato de

trabajo. De la prueba surge que el asunto estaba bajo estudio por los abogados del patrono. Tres meses no es un término inusitadamente largo para hacer una determinación de esta naturaleza. Prolongando la posición del tribunal a quo, tendríamos que concluir que si el cambio de norma se hubiese adoptado inmediatamente después de dictada la sentencia ello sería índice de ausencia de discrimen. Este resultado es claramente ilógico. En cuanto a que el cambio tuvo lugar principalmente en el Departamento de Playa, este hecho se explicó satisfactoriamente, pues los otros empleados que continuaron bajo un salario semanal siempre trabajaron un horario regular, mientras que los de dicho departamento dependían de la frecuencia de los embarques de azúcar y mieles. Aparentemente la posición de los querellantes es que la querellada estaba obligada a continuar pagándoles la compensación mínima semanal por las horas regulares de labor y luego satisfacerle adicionalmente las horas extras. Esta solución sería sumamente onerosa y opresiva.

Finalmente el tribunal a quo indica que hubo una reducción en el ingreso de los obreros. Hemos examinado los resúmenes de las nóminas ofrecidas en evidencia y es cierto que así ocurrió en algunas semanas, pero también se produjo la situación contraria, ya que hay semanas en que se sobrepasó en forma considerable el salario semanal garantizado. En vista de que concluimos que el cambio de trabajo no se debió a discrimen alguno del patrono sino a un propósito legítimo, es innecesario discutir los restantes errores señalados.

*Se revocarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, y se desestimarán las querellas en todas sus partes.*