PEDRO ALFONSO REYES, menor representado por su padre con patria potestad FELICIANO REYES, demandante y apelado, *v.* ALBERTO APONTE, MANUEL y CRÍSPULO DÍAZ, individualmente y haciendo negocios bajo la firma de ENRIQUE DÍAZ & HERMANOS, demandados y apelantes.

Núm. 8475.—*Sometido:* Junio 19, 1942. *Resuelto:* Julio 31, 1942.

*F. Díaz Marxuach,* abogado de los apelantes; *F. R. Aponte,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Este pleito fué instituído por Pedro Alfonso Reyes, menor de edad representado por su padre Feliciano Reyes, en

reclamación de los daños y perjuicios que alegó haber sufrido al ser acometido y agredido por los demandados en Caguas, P. R., el 10 de abril de 1936. La vista del caso fué celebrada ante el Juez Sr. Miguel García González, de la Corte de Distrito de Humacao, pero habiendo cesado en su cargo antes de dictar sentencia, por estipulación de las partes fué sometido el caso por las alegaciones y el récord taquigráfico al Juez Sr. Benjamín Ortiz de la misma corte, quien en 21 de julio de 1941 dictó la sentencia apelada que condenó a los demandados a pagar al demandante la cantidad de $315 en concepto de daños y perjuicios y $90 de honorarios de abogado. La cantidad de $315, importe de la indemnización, la descompone el juez en el último párrafo de su opinión en las siguientes partidas: $40 por honorarios del médico y la enfermera; $75 por dinero dejado de ganar por el demandante; $100 en concepto de angustias mentales, y $100 adicionales en concepto de daños morales sufridos por el demandante.

El primer señalamiento de error consiste en haber ordenado la corte *a quo* la eliminación de los apartados 1 y 2 de las defensas especiales alegadas en la contestación. La primera de ellas consistió en que el 9 de octubre de 1936 se celebró en la Corte Municipal de Caguas la vista del caso seguido por el Pueblo de Puerto Rico contra Pedro Alfonso Reyes, Alberto Aponte y Manuel Díaz, por un delito de alterar la paz, resultando absuelto Alberto Aponte y condenados los acusados Manuel Díaz y Pedro Alfonso Reyes a pagar una multa de $3 y las costas.

La segunda consistió en que en la misma fecha dicha Corte Municipal celebró la vista del caso seguido contra Manuel y Críspulo Díaz y Alberto Aponte, a virtud de denuncia formulada por Pedro Alfonso Reyes por un delito de acometimiento y agresión grave, siendo absueltos los acusados.

La alteración de la paz y el acometimiento y agresión grave a que se contraen las dos defensas especiales están ba-

sados en los mismos hechos acaecidos el 10 de abril de 1936 que sirvieron de base a la causa de acción alegada por el demandante.

Sostienen los apelantes, basándose en un *obiter dictum* que aparece en el caso de *Torres* v. *Sucesión Córdova,* 31 D.P.R. 897, 898, que para determinar la naturaleza de una responsabilidad civil nacida de un acto punible, debe considerarse el actual Código Penal, así como el origen de la responsabilidad civil en el Código Penal español, ya que según el primero de dichos códigos, el segundo sólo fué derogado en todo lo que se relacione o refiera a delitos, y el artículo 116 de la Ley de Enjuiciamiento Criminal española prescribía que "la extinción de la acción penal no lleva consigo la de la civil, a no ser que la extinción proceda de haberse declarado por sentencia firme que no existió el hecho de que la civil hubiese podido nacer." Arguyen los apelantes que como la Corte Municipal de Caguas absolvió a los acusados del supuesto delito que sirvió de base a la acción civil del demandante apelado, declarando así que no existieron los hechos de que hubiera podido nacer la acción, tales defensas especiales, de ser probadas, hubiesen demostrado la inexistencia de la causa de acción ejercitada.

No tienen razón los apelantes. El vigente Código Penal que tal salvedad contiene en su artículo 560, empezó a regir en esta Isla el primero de julio de 1902. También empezó a regir en Puerto Rico el primero de marzo del mismo año el Código Civil Revisado, cuyo artículo 1059, igual que el 1092 del español, prescribía que "las obligaciones civiles que nazcan de los delitos o faltas se regirán por las disposiciones del Código Penal." Así permaneció nuestra legislación hasta que por Ley de 10 de marzo de 1904 se aprobó el vigente Código de Enjuiciamiento Civil, cuyo artículo 2 prescribe: "Cuando la violación de un derecho permita el ejercicio de ambas acciones, la civil y la criminal, el derecho de ejercer la una no impide el derecho de ejercer la otra." Y

para armonizar la ley sustantiva con la adjetiva, en la misma fecha se enmendó el artículo 1059 del Código Civil Revisado, el que desde entonces dice así: "Las obligaciones civiles nacidas de los delitos o faltas se regirán por las disposiciones *de este Código.*" (Bastardillas nuestras.) Ante tan terminantes manifestaciones contenidas en los artículos 1059 y 2 del Código Civil y de Enjuiciamiento Civil respectivamente, no puede sostenerse seriamente que en Puerto Rico en la actualidad, y desde el año 1904, las obligaciones civiles nacidas de los delitos se rijan por las disposiciones del Código Penal español. Véase el caso de *Guzmán* v. *Vidal,* 19 D.P.R. 841, donde este Tribunal, por voz del entonces Juez Presidente Sr. Hernández, hizo un estudio exhaustivo de la cuestión.

El segundo señalamiento de error se refiere a haber incluído entre los daños sufridos por el demandante la cantidad de $40 por concepto de honorarios del médico y de la enfermera, y $75 en concepto de sueldos dejados de ganar. Ya hemos visto que la sentencia propiamente dicha no especifica los distintos conceptos por los cuales se concedió la indemnización de $315; pero en el último párrafo de la opinión el juez hace tal distribución y aunque la apelación no se da contra los fundamentos de una sentencia, parece claro que si el juez, al calcular la indemnización total, tomó por base ciertas partidas de daños a que el demandante no tenía derecho, tales partidas deben deducirse de la cantidad total de la sentencia.

En cuanto a los honorarios médicos, el Dr. F. Ellis Cambiaso, que asistió al demandante apelado desde que recibiera las lesiones hasta que fué dado de alta, declaró que sus servicios no le habían sido pagados, pero que valían de $20 a $25. La enfermera María López, que le hizo las curaciones prescritas por el facultativo, incluyendo aplicación de inyecciones, etc., declaró que sus servicios tenían un valor de $15, y que el demandante se los había pagado. Ninguna de esas declaraciones fué contradicha por los apelantes.

Arguyen los apelantes que cuando un menor sufre daños y perjuicios causados por culpa o negligencia de otra persona, los daños que consistan en pérdida de servicios, gastos de asistencia médica, medicinas, y otros semejantes, no le pertenecen a él personalmente, sino a sus padres, y por consiguiente éstos, si quieren recobrarlos, deben entablar una acción a su propio nombre y para su exclusivo beneficio. Invocan en apoyo de su proposición los casos de *Rivera* v. *Reyes,* 31 D.P.R. 440, y *Karr* v. *Parks,* 44 Cal. 46. La doctrina sostenida en dichos casos no es aplicable al presente. La evidencia revela que el demandante, al tiempo de recibir los daños personales, estaba trabajando y ganaba un salario de $9 semanales; que poco tiempo después de recibir las lesiones contrajo matrimonio con la enfermera que lo asistió; y que al celebrarse el juicio ya había cumplido veintiún años de edad. Tratándose de un niño, se presume que el padre sea quien haya pagado los gastos de curación, puesto que ésa es su obligación, pero cuando se trata de un menor de la edad del demandante, que gana un salario que le permite pagar tales gastos, y no resulta de la prueba que sea el padre quien los haya pagado, no vemos cómo ha de pertenecer al padre el derecho a recobrar un dinero que él no ha desembolsado. El artículo 142 del Código Civil (ed. 1930) incluye la asistencia médica en el concepto de alimentos, y el 150 del mismo cuerpo legal prescribe que la obligación de prestarlos cesará "cuando el alimentista pueda ejercer un oficio, profesión o industria, o haya adquirido un destino o mejorado de fortuna, de suerte que no le sea necesaria la pensión alimenticia." Interpretando el artículo 152 del Código Civil español, igual al 150 del nuestro, dice Manresa:

"Del principio de que los alimentos no se deben sino en cuanto son necesarios, nace la consecuencia de que ni aun el padre está obligado a darlos al hijo cuando éste tuviere bienes propios, o profesión o industria que puedan rendirle lo necesario para su subsistencia, y así lo declaró ya la ley 6a., tít. 19 de la Partida 4a., en la que se dispuso que 'cuando el *fijo oviese de lo suyo en que podiese*

*vevir, o oviere tal menester porque podiese guarescer usando dél sin mal estanza de sí, entonce non es tenudo el padre de pensar dél'.''* 1 Manresa, Comentarios al Código Civil Español, 667 (3a. ed.).

■ Arguyen asimismo los apelantes que conforme resulta de la prueba, el principal del demandante apelado le pagó su sueldo durante los dos meses que no pudo trabajar y que por lo tanto no puede él reclamar un salario que no dejó de percibir. No tienen razón los apelantes. El hecho de que fuese pagado el sueldo del demandante apelado a pesar de que no asistió a su trabajo, no beneficia al que causó el daño y no impide al que lo sufrió reclamar tal partida. Esa es la doctrina sostenida por la mayoría de las autoridades. Véanse los casos que se acopian en las extensas monografías sobre la materia en 18 A.L.R. 678, y 95 A.L.R. 575.

■ No obstante lo dicho, la partida de $40 debe ser reducida a $35, ya que el propio médico declaró que sus honorarios valían de $20 a $25, y en tal caso debe aceptarse la valoración más baja, o sea $20, por los servicios médicos, más $15 por los de la enfermera. El hecho de que el médico, al celebrarse la vista, no hubiera recibido sus honorarios, no impide que puedan ser recobrados.

■ El tercer señalamiento de error, está bien fundado. En la condena a pagar $315 están incluídos, como expresó el juez inferior en el párrafo final de su opinión, ''$100 en concepto de angustias mentales sufridas por el demandante y $100 adicionales en concepto de daños morales . . .'' Los daños morales están incluídos en el concepto de angustias mentales y por consiguiente al conceder el juez inferior $100 por aquel concepto en adición a los $100 que había concedido por angustias mentales, no hizo otra cosa que condenar a los demandados a indemnizar dos veces el mismo daño. Véase al efecto 8 R.C.L. 518 *et seq.*

■ Arguyen además los demandados apelantes que el demandante no alegó la existencia de daños por concepto de angustias mentales y morales. Sin embargo, en el párrafo 2

de la segunda demanda enmendada se alegó que "por motivo de los golpes recibidos ha experimentado un gran malestar, dolores físicos y morales." Y a falta de una solicitud de especificación, tal alegación es suficiente.

El cuarto señalamiento de error se contrae a impugnar la conclusión a que llegara la corte al efecto de que el demandado Críspulo Díaz no participó en la contienda con el demandante. Según la prueba de este último, en la fecha de la alegada agresión él trabajaba en cierto establecimiento mercantil de Caguas, percibiendo un sueldo de $9 semanales, más 1 por ciento de las ventas que hiciera. En la mañana de ese día, el demandante salió de la tienda donde trabajaba a tomar un refresco y frente al establecimiento vió un hombre que vendía mantecado, y al pedirle que le sirviera un vaso sintió que le silbaban de la tienda del frente, perteneciente a Enrique Díaz y Hermanos, y vió que Manuel Díaz le hacía señas para que entrase a dicha tienda. El demandante acudió a la llamada y Manuel Díaz, que se hallaba a la entrada de la tienda, le acompañó hacia adentro y luego de haber caminado unos pasos, al preguntarle el demandante qué se le ofrecía, Díaz le contestó con una agresión, repeliéndola el demandante y estableciéndose así una lucha entre ellos en la que inmediatamente vino a participar Críspulo Díaz, que se hallaba en la tienda y quien juntamente con su hermano Manuel agredió al demandante con los pies y con los puños. El demandante retrocedía defendiéndose, pero al llegar a la puerta, el otro demandado, Aponte, le dió un empujón, cayendo el demandante en la acera, de donde lo recogió el vendedor de pan Ceferino González y lo llevó al cuarto de socorro. Los golpes recibidos por el demandante los describe el Dr. F. Ellis Cambiaso así:

"Ligeras contusiones y equimosis en las regiones molar y temporo-frontal derechas y también en las regiones lagrimal y naso-orbicular, de carácter leve. Contusión fuerte en la región izquierda de los huesos propios de la nariz, de pronóstico reservado, pues hubo una epistaxis, se quejaba de mucho dolor al tacto. Ligera contusión

o equimosis en la región frontal izquierda de carácter leve y varias contusiones en las regiones escapular, dorsal y lumbar derechas de carácter leve. Contusión muy fuerte del pie izquierdo en la región metatarsiana externa. Todas estas lesiones pueden curarse en el término de dos semanas, pero debido al pronóstico reservado pueden tardar mayor tiempo. . . ."

Según la prueba de los demandados apelantes, en la fecha indicada un cliente de Enrique Díaz & Hnos. estaba parado en la acera de su tienda viendo unos zapatos en la vitrina y el demandante le dijo: "¿Tú quieres unos zapatos? En la tienda del frente tenemos muy buenos." Entonces Manuel Díaz, dirigiéndose al demandante, le dijo: "Eso no es así"; replicando aquél: "Lo mismo me lo llevo de aquí que de dentro de la tienda"; contestándole Díaz que tenía que respetar un poco, siendo Díaz en ese momento agredido en el labio inferior por el demandante, produciéndose así la riña entre ellos; que Críspulo Díaz estaba enfermo ese día y no se encontraba en la tienda, y que la participación de Alberto Aponte consistió en tratar de separar a las dos personas que reñían.

La evidencia de una y otra parte fué contradictoria, pero un estudio de la misma demuestra, y así trasciende de los autos, que en efecto el demandante fué agredido por los demandados y que la causa de la agresión fué probablemente rivalidad en los negocios. El testimonio del hombre que vendía mantecado es digno de crédito y no demuestra el testigo por su declaración que él tuviese prejuicio a favor o en contra de una u otra parte. Este hombre, por la posición en que se hallaba, pudo ver, por la puerta donde entró el demandante, que quedó abierta, lo que sucedió en el interior del establecimiento. Su declaración está corroborada por la del vendedor de pan Ceferino González, y por la de Juan Ortiz, quien según declaró, pensó comprar unos zapatos y se dirigió a la tienda de Enrique Díaz y Hnos., y estando allí, frente a la vitrina, fué que se desarrollaron los acontecimientos que dieron lugar a este pleito. Los apelantes se quejan

de que el juez inferior, que no vió declarar a los testigos, diera crédito a los del demandante y no a los de los demandados. A nuestro juicio, el juez inferior, dentro de los medios que tuvo a su alcance, apreció correctamente la evidencia. Tanto exageran los demandados y sus testigos al tratar de aminorar la importancia de las lesiones recibidas por el demandante, que fácilmente se advierte que ocultan gran parte de la verdad. En la contestación jurada por el demandado Manuel Díaz se niega enfáticamente que el demandante recibiera las lesiones que le fueron inferidas y que quedaron probadas por la declaración completamente desinteresada y no controvertida del Dr. F. Ellis Cambiaso. El mismo Manuel Díaz, refiriéndose a las consecuencias de la lucha entre él y el demandante, declaró: ''¿Cuál fué el resultado?—Que me dió e hirió en el labio inferior.—¿A él no le pasó nada?—Nada.—¿No le pasó nada?—Pudo ser que le haya pasado algo . . . —¿No le vió rasguño en la cara ni en el pecho ni en un pie?—Yo no le ví ninguno.''

¿Cómo era posible que el juez inferior pudiese dar crédito a una declaración que tan reñida se hallaba con la realidad, puesto que de la prueba incontrovertida del demandante, y especialmente de la declaración del médico que lo asistió, resulta que el demandante presentaba varias heridas y contusiones en la cara? Se dice que el juez inferior no debió dar crédito al demandante y sus testigos al declarar que Críspulo Díaz participó en la agresión contra Pedro Alfonso Reyes. Alegan que el Dr. J. J. Nogueras declaró que en los primeros días del mes de abril de 1936 asistió a Críspulo Díaz, quien padecía de trastornos intestinales y estaba acostado, y que esta declaración contradice la de los testigos del demandante. Sin embargo, el Dr. Nogueras, al preguntársele en qué días asistió a dicho demandado, declaró: ''Durante los días del mes de abril, los primeros días del mes de abril; por allá alrededor del 10, 8 ó 10, en esos días . . . '' Y al preguntársele: ''¿Pero no recuerda los días'', contestó:

"Exactamente no." ¿Podía acaso el juez inferior aceptar una declaración tan imprecisa como ésta para negar crédito a testigos oculares que declararon que el día 10 de abril de 1936 Críspulo Díaz participó en la agresión? A nuestro juicio no existe el cuarto de los errores señalados.

El quinto se refiere al pronunciamiento por el cual se condenó a los demandados a pagar $90 por concepto de honorarios de abogado. Se alega que no hubo temeridad por parte de ellos al oponerse a una reclamación tan exagerada como la que hizo el demandante, habida cuenta del montante que finalmente se le concedió por la sentencia. En efecto, la reclamación fué exagerada, pues en la demanda original se solicitó sentencia por la cantidad de $10,000 por los daños y perjuicios causados, más $2,000 por daños ejemplares o punitivos, y las costas, y en la segunda demanda enmendada dicha reclamación fué reducida a $5,000 por daños y perjuicios más $2,000 por daños ejemplares o punitivos, pero no es menos cierto que los demandados negaron en absoluto la existencia de los daños reclamados, y en tales condiciones se colocaron en una situación de temeridad. *Font* v. *Viking Construction Corp.*, 58 D.P.R. 689, 712. Considerando el trabajo realmente realizado por el abogado del demandante en la corte inferior, no creemos que debamos intervenir con la discreción del juez inferior al calcular sus honorarios en la cantidad de $90.

*Procede, por lo expuesto, modificar la sentencia apelada, reduciéndola a la cantidad de $210 por concepto de daños y perjuicios, más $90 por honorarios de abogado y las costas, y así modificada confirmarla.*

Los Jueces Presidente Sr. Del Toro y Asociado Sr. Travieso no intervinieron.