FUTURAMA IMPORT CORP. e ISAAC MENDA, demandantes y recurrentes *v.* TRANS CARIBBEAN AIRWAYS, demandada y recurrida.

*Número:* R-74-48     *Resuelto:* 30 de enero de 1976

*Reichard & Colberg* y *Federico Calaf Legrand,* abogados de los recurrentes; *F. Castro Amy,* abogado de la recurrida.

PER CURIAM: Distinto a otras instituciones de nuestro Código Civil, en materia de responsabilidad extracontractual dimanante del Art. 1802 (31 L.P.R.A. sec. 5141) es forzoso reconocer que "a pesar de [la] divergencia entre los Derechos del grupo que podríamos llamar continental y el angloamericano, la materia regulada es de las que ofrece caracteres más uniformes en todos los países." Puig Brutau, *Fundamentos de Derecho Civil,* Tomo II, Vol. 2, pág. 660. Predomina lo que dicho autor caracteriza como "Derecho resultante de la casuística profesional [que] representa el elemento verdaderamente creador y que impulsa la evolución de los sistemas jurídicos." El caso de autos rebasa sus hechos sencillos, para poner de manifiesto la realidad antes expuesta. Veamos.

La demandante recurrente, Futurama Import Corp., importó por la vía aérea de Italia un cargamento de ropa de mujer. La mercancía fue llevada a Nueva York por la línea Iberia. Allí fue descargada y más tarde transportada a Puerto

Rico por la Trans Caribbean Airways, aquí demandada recurrida. En el interín en que la mercancía estuvo en Nueva York, parte de la carga se dañó por haber quedado expuesta a la lluvia antes de ser cargada en el avión de la demandada.

La firma importadora estimó el valor de la mercancía dañada en $5,565.60. El tribunal de instancia aceptó esa cifra como correcta. Un inspector o ajustador de seguros, quien 35 días después de recibida la mercancía en Puerto Rico fue a estimar la pérdida, no pudo hacerlo porque la importadora le informó que la había rematado por $350.

La mercancía había sido asegurada en Italia con la Riunione Adriática, una compañía aseguradora de aquel país, la cual pagó a Futurama la mitad de la pérdida. Futurama reclamó a Trans Caribbean Airways la otra mitad y en vista de que ésta se rehusó a pagar, le demandó por la totalidad de la pérdida.

En su sentencia original el tribunal de instancia condenó a la demandada a pagar el total de la pérdida menos los $350 que Futurama había recobrado al vender la mercancía dañada, lo que arrojó un balance de $5,215.60. Previa moción de reconsideración de la demandada Trans Caribbean Airways, el tribunal de instancia, en sentencia enmendada, reconsideró y redujo la sentencia a $2,432.80. Dicha cifra es el resultado de haberle restado los $2,782.80 que la demandante había recibido de la compañía aseguradora italiana.

Invocando la aplicación de la doctrina de la fuente colateral "collateral source doctrine" la recurrente argumenta que debió mantenerse la cifra original de $5,215.60. Si bien los hechos particulares del caso nos convence que debemos confirmar la sentencia recurrida, es necesario una breve exégesis al respecto.

■ Reiteramos la vigencia en nuestra jurisdicción de dicha doctrina, que como regla general impide al causante de un daño deducir del importe de la indemnización de la cual responde, la compensación o beneficios que haya recibido el

perjudicado de una tercera persona o entidad, esto es, de una fuente no relacionada con el demandado, denominada *"collateral source rule"*. Constituye la norma que aplicáramos en los casos de *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956) ; *Pereira* v. *Commercial Transport Co.*, 70 D.P.R. 641 (1949) y *Reyes* v. *Aponte*, 60 D.P.R. 890 (1942), en que sostuvimos el derecho de una parte a reclamar unos salarios por lucro cesante, no empece habérselos pagado su patrono, por estimar que se trataban de unas donaciones que no podían beneficiar al demandado. El pago de salarios durante vacaciones o enfermedad del empleado se reconoce por razones distintas a las que dan lugar a una compensación por negligencia. Los salarios se originan en un contrato de trabajo, y en caso de ausencia por accidente hasta podrían tener carácter de bonificación o donación a un buen empleado para beneficio de su familia que depende de ese ingreso; no es una compensación propiamente dicha. Un análisis de la abundante literatura sobre esta doctrina, [1] demuestra que la misma descansa sobre fundamentos racionales y lógicos, que si bien a veces resultan complejos, no necesariamente anulan su eficacia y la variedad de beneficios en que es susceptible de ser correctamente aplicada.

■ El valor o interés social de una norma jurídica sobre daños está subordinado al principio rector de *hacer justicia* [1a] independientemente de su origen. La utilidad de la doctrina que nos ocupa no puede circunscribirse en términos exclusivos

---

[1] Véase la documentada opinión del Tribunal Supremo de California de *Helfend* v. *Southern California Rapid Transit Dist.*, 465 P.2d 61 (1970) la cual hace un extenso estudio sobre la doctrina, pondera las críticas a la misma y le reitera en principio su adhesión. También *Tyminski* v. *United States*, 481 F.2d 257 (1973).

[1a] Un comentarista crítico de la doctrina concluye: "No obstante, ante el sistema prevaleciente, la regla realiza un fin social. En lo menos, remueve de la escena del juicio cuestiones controversiales complejas. En lo más, en algunos casos, opera como un instrumento de lo que la mayoría de nosotros estaríamos inclinados a llamar *justicia*." Maxwell, *The Collateral Source Rule in the American Law of Damages;* 46 Minn. L. Rev., págs. 669, 695 (1962). (Énfasis y traducción nuestro.)

de castigar al causante del daño o de premiar al perjudicado. Tampoco puede basarse en una premisa de costo. El enfoque trasciende tal disyuntiva para darle cabida a un principio de mayor valía, a saber, si a una persona se le permitirá cosechar el fruto de su propio esfuerzo en determinadas circunstancias. La preocupación en torno a la llamada "doble compensación" o el exceso de compensación se desvanece al constarse que ello no es a costa ni con cargo del demandado, mientras que, por el contrario, la no aplicación de la regla, de ordinario, perjudicaría al demandante—víctima—ya que él pagó las primas, en el caso del seguro, o soportó los descuentos para, por ejemplo, la pensión de retiro y otros.

"Cuando la víctima es indemnizada, el perjuicio ha desaparecido. Por ello no cabría demandar de nuevo reparación. El principio es simple. Pero su aplicación origina numerosas dificultades. Se refieren a que es delicado en ocasiones saber si ha sido total la indemnización de la víctima; cuando no la haya sido, la víctima puede demandar el complemento. Se refieren también a que, *en algunos casos, el accidente permite a la víctima recibir de un tercero una suma de dinero; ¿se encuentra todavía la víctima con derecho para reclamar una indemnización al autor del daño?*

.     .     .     .     .     .     .     .

La segunda constituye lo que puede llamarse el problema de la acumulación de las indemnizaciones. La víctima no puede acumular varias indemnizaciones por el mismo perjuicio. Así, cuando el daño le haya sido causado por varias personas, aquélla tiene derecho a reclamar reparación de la totalidad a uno solo de los coautores; pero, si obtiene satisfacción, no puede reclamar ya nada a los restantes coautores (cfr. infra, ns. 536 y 1.072). *La cuestión es más difícil de resolver cuando cabe dudar acerca de la naturaleza de la suma que la víctima ha recibido de un tercero: ¿es una indemnización?; en ese caso, su acción se ha extinguido, ya que está reparado el daño sufrido; ¿se trata de una suma abonada por otro título?; entonces, la víctima conserva su acción contra el autor del daño."* (²) *(Énfasis suplido.)*

---

(²) Mazeaud, *Derecho Civil*, Parte II, Traducción de Luis Alcalá-Zamora y Castillo, págs. 62 a 63 (ed. 1960).

■ Ante la alternativa de aplicar mecánicamente la doctrina o rechazarla en su totalidad, somos de opinión que lo más razonable es el identificar en cada caso sus circunstancias peculiares, y de acuerdo a la naturaleza del daño sufrido y del examen del origen y propósito(³) o razón de ser del beneficio colateral de que se trate, determinar la improcedencia o la justificación de la acumulación de compensaciones. Contrario a las posiciones extremas aludidas, ésta toma en cuenta las diversas clases de fuentes de beneficios colaterales y las diferencias entre las mismas. "Es incorrecto analizar el ámbito o frontera de la regla en el contexto de lograr una regla sencilla aplicable." *Feeley* v. *United States*, 337 F.2d 924, 927 (1964); Helfend, *supra*, págs. 61–63, escolio 3.

■ A los fines de decidir la aplicabilidad o no de la doctrina, en el campo de seguro es necesario establecer una distinción entre seguros de cosas y los seguros sobre la vida o contra accidentes susceptibles de ocurrirle a las personas.

■ En el caso de autos, bajo la vertiente civilista de acumulación de indemnizaciones o bajo la doctrina anglosajona, es obvio que la cantidad adicional que reclama la recurrente no sólo tiene el mismo concepto y naturaleza que la ya recibida de la compañía aseguradora italiana, sino que se funda en un seguro por pérdida de cosa, en el cual predomina el aspecto de indemnización. Ya fue, por tanto, resarcida de esa parte de los daños y no debe aspirar a una indemnización adicional por los mismos.

■ Finalmente, es conveniente recordar que sin menoscabo de nuestra tradición civilista, tanto ayer como al presente, son válidas las siguientes expresiones:

---

(³) Véanse: Cooper, *A Collateral Benefits Principle*, 49 The Canadian Bar Review 501 (1971) y; Sedler, *The Collateral Source Rule and Personal Injury Damages: The Irrelevant Principle and The Functional Approach*, Part II, 58 Ky.L.J. 36, en especial a la pág. 63 (1969–70); James, *Social Insurance and Tort Liability*, 27 N.Y.U.L. Rev. 537 (1952).

"Ciertamente que en esta jurisdicción la ley común no es una frase que debemos oir como un conjuro, y por otro lado tampoco debemos alarmarnos por la mera circunstancia de que cualquier doctrina en particular, por estar basada en la justicia y la razón universal, resulte tener su origen en la ley común. Al confrontarnos con un caso que no esté previsto en nuestro Código Civil u otra disposición legislativa no debemos temer los males ni rechazar las bondades que pueden hallarse en los principios de la ley común u en otras fuentes de la humana experiencia. Pocos tribunales se hallan menos embarazados por los precedentes, o en materias no previstas por el estatuto, tan libres para seguir los dictados de la conciencia y del sentido común que los tribunales de esta isla. Levantar una sólida estructura sobre los principios fundamentales que tan amenudo se encuentran arraigados lo mismo en la jurisprudencia americana que en la española que comprenda los mejores elementos de los dos grandes sistemas, y que en tanto sea posible quede libre de los defectos de ambos, es nuestro especial privilegio si solamente aprovechamos la oportunidad que se nos presenta." *El Municipio de Vega Baja* v. *Smith*, 27 D.P.R. 632, 637–638 (1919).

*La sentencia será confirmada.*

El Juez Presidente, Señor Trías Monge y el Juez Asociado, señor Rigau, emitieron opiniones concurrentes por separado con las cuales concurre el Juez Asociado, Señor Irizarry Yunqué.

—O—

Opinión concurrente del Juez Presidente, Señor Trías Monge, con la cual concurre el Juez Asociado, Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 30 de enero de 1976

Concurro con el resultado a que llega el Tribunal. Comparto, no obstante, el criterio del compañero Juez Rigau de que debe rechazarse la inserción en nuestro derecho civil de la regla angloamericana de la fuente colateral. En el propio derecho angloamericano se ha abandonado la versión primi-

tiva de esta regla, producto de las circunstancias particulares en que se desarrolla en dicho medio jurídico, durante el siglo diecinueve en especial, el derecho de daños. Sedler, *The Collateral Source Rule and Personal Injury Damages*: *The Irrelevant Principle and the Functional Approach*, 58 Ky. L.J. 36, 38–40 (1969); McGregor, *Compensation versus Punishment in Damage Awards*, 28 The Modern L. Rev. 629 (1965); Cooper, *A Collateral Benefits Principle*, 49 Canadian Bar Rev. 501 (1971).

El derecho civil cuenta con una amplia literatura sobre los complejos problemas que suscita la acumulación de beneficios. Borrell Macía, *Responsabilidades Derivadas de Culpa Extracontractual Civil*, 1958, pág. 267 y ss.; Reyes Monterreal, *Acción y Responsabilidad Civil Derivadas de Delitos y Faltas*, 3ª ed., 1958, pág. 272 y ss.; Santos Briz, *Derecho de Daños*, 1963, pág. 227 y ss.; Lombardi, *La Responsabilidad Extracontractual Civil en el Derecho Panameño*, 1965, pág. 293 y ss.; Quintano Repollés, *Seguros y Responsabilidades Civiles Delictuales*, 45 Rev. de Der. Privado 3 (1961); II (2) Mazeaud y Mazeaud, *La Responsabilidad Civil*, 1960, pág. 62 y ss. Es a esta fuente primaria que debemos acudir para analizar la cuestión ante nos, sin que ello signifique naturalmente que debemos cerrarnos a lo que esté sucediendo en otros sistemas jurídicos.

La literatura civilista citada revela una tendencia, observable también en el derecho angloamericano actual, a no suscribir una regla general para la determinación de cuándo debe permitirse y cuándo no la acumulación de beneficios. Se elaboran pautas distintas, aun en proceso de desenvolvimiento, para situaciones diferentes. Deben identificarse en consecuencia, como acertadamente se observa en la opinión *per curiam*, las circunstancias específicas de cada caso y examinar en tal contexto factores tales como el origen, la naturaleza y el propósito del beneficio adicional envuelto; los objetivos básicos del sistema de daños y el rol del seguro en sí; la naturaleza del daño sufrido; si el beneficio adicional entraña un enrique-

cimiento injusto; si deriva, y hasta qué punto, de sacrificios pecuniarios del perjudicado; si el tercero benefactor puede o no subrogarse en los derechos del perjudicado contra el causante del daño; los costos sociales de una solución u otra; y el mejor modo, en suma, de conciliar los intereses envueltos en el caso concreto ante nos.

En el caso de autos, el beneficio adicional proviene de un seguro contra pérdida de cosa, adquirido en el curso normal de los negocios. Como bien se señala en la opinión *per curiam* y en la del compañero Rigau, ni en el derecho civil ni en el angloamericano, si bien se han formulado algunos pareceres distintos, se admite hoy en día la acumulación de beneficios en este tipo de casos. Se trataba aquí de una actividad comercial en que la contratación del seguro se efectúa rutinariamente, por lo general, y es parte del costo de hacer negocios. No hay verdadero sacrificio pecuniario del demandante pues el pago de la prima es inseparable de la actividad comercial. La misión de este seguro es claramente reparadora. Basta con resarcir al comerciante perjudicado de los daños sufridos. No hay políticas sociales que aconsejen premiarlo con el recibo de una compensación adicional. En estos casos, en efecto, la práctica normal es que el beneficiario del seguro le cede al asegurador sus derechos contra el tercero causante del daño, siempre y cuando esta subrogación esté permitida por ley. [1] Sedler, *supra*, 82; Cooper, *supra*, 511, 524; Borrell Macía, *supra*, 269–270; Lombardi, *supra*, 294. En tales circunstancias lo único que puede recobrar el perjudicado es la diferencia, si alguna, entre los daños sufridos y lo cobrado bajo el seguro.

Por las razones mencionadas, creo que debemos abstenernos de comentar la corrección o incorrección de *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956) y *Pereira* v. *Commercial Transport*, 70 D.P.R. 641 (1949). Estos casos deberán anali-

---

[1] No es necesario en este caso expresar juicio sobre si existe o no aquí derecho de subrogación.

su debido tiempo a la luz de los criterios anteriormente expuestos.

Existen dos cuestiones adicionales en este pleito que merecen mención. El daño a la mercancía ocurrió en el estado de Nueva York. El caso por lo tanto encierra un problema de Derecho Internacional Privado. No se presentó prueba, sin embargo, respecto a lo que dispone la ley de Nueva York sobre las cuestiones planteadas en este litigio. Conforme a la teoría tradicional vigente en Puerto Rico, la ley extranjera debe ser objeto de prueba. *Esteves* v. *Registrador*, 43 D.P.R. 7, 9 (1932) ; Velázquez, *Directivas Fundamentales del Derecho Internacional Privado Puertorriqueño*, Río Piedras, 1945, pág. 75 y ss. Véase el Art. 36 de la Ley de Evidencia, 32 L.P.R.A. 1711. Si no se presenta dicha prueba, la teoría adoptada por este Tribunal es que se presume entonces que la ley extranjera es idéntica a la local. *Esteves* v. *Registrador*, supra.

La teoría tradicional se enfrenta actualmente a la fuerte competencia de la doctrina que permite tomar conocimiento judicial de las leyes extranjeras. Esta segunda teoría es la adoptada por las jurisdicciones que se han acogido a la *Uniform Judicial Notice of Foreign Law Act*, 9A U.L.A. 320 (1957) o a la *Uniform Interstate and International Procedure Act*, 13 U.L.A. 309 y ss., secs. 4.01–4.04 (1975). En Puerto Rico se intentó adoptar esta teoría más moderna en las Reglas de Evidencia de 1954 y 1958 (Reglas 802 y 803 de ambos proyectos). Aun bajo esta teoría, no obstante, es imprescindible que las partes aleguen al menos que debe aplicarse la ley extranjera, lo cual no sucedió aquí. Ehrenzweig, *A Treatise on the Conflict of Laws*, St. Paul, Minn., 1962, pág. 362. Es innecesario por tanto discutir en su fondo si situaciones como la presente se rigen por la *lex loci delicti*—como actualmente es el caso en España después de la revisión al Título Preliminar del Código Civil Español (Castán, *Derecho Civil Español, Común y Foral*, 11ª ed., 1975, tomo 1, vol. 1, págs. 633 y 642)—o por otra regla conflictual. Se aplica de todos modos en las circunstancias de

este caso, en ausencia de prueba o alegación referente a disimilitudes entre la ley de Nueva York y Puerto Rico, la ley de Puerto Rico.

El segundo asunto es a modo de aclaración solamente. El Capítulo 20 del Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, 26 L.P.R.A. secs. 2001–2004, puede o no afectar casos de daños a la propiedad. Es impropio expresarnos sobre el particular, sin embargo, ya que los hechos de este caso son distintos a las circunstancias a que se refiere el Código de Seguros.

—O—

Opinión concurrente del Juez Asociado Señor Rigau con la cual concurre el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 30 de enero de 1976

Los hechos del caso están resumidos en la opinión del Tribunal y no es necesario repetirlos aquí. A ellos nos remitimos.

La cuestión que plantea este recurso es si estuvo correcto o no el tribunal de instancia al reducir la cuantía de los daños reconocidos como tales, en la cantidad que el demandante perjudicado de hecho recibió de la compañía aseguradora. Entendemos que lo estuvo, como lo entiende la mayoría, y por eso concurrimos con el resultado de su decisión.

Sin embargo, creímos que el Tribunal debió pronunciarse sobre el problema aquí envuelto, en el sentido de revocar la inserción que en nuestro derecho civil de daños se ha hecho de la llamada regla de la fuente colateral (*collateral source rule*).

El problema jurídico de compensar los daños causados por culpa o negligencia se consideró desde tiempo inmemorial como uno de estricto derecho privado, esto es, como un problema de compensar el daño causado con fondos del patrimonio del causante del daño y como uno de reconciliar lo mejor posible los intereses en conflicto. En la actualidad, además de adjudicar

para una justa compensación en el nivel privado, los tribunales consideran como parte del problema el interés social que pueda ser tocado por la decisión. (1)

Básicamente en el caso de autos se trata de si es justo, en el ámbito privado, que una parte sea compensada dos veces por un daño económico, y si en el ámbito del interés general es socialmente deseable y económico que así ocurra o, si por el contrario, eso es socialmente indeseable por constituir ello un despilfarro social.

Sobre el particular el derecho no es unánime. Muchas jurisdicciones, dejándose llevar probablemente por la actitud inicial que mencionamos—la de que se trataba de un mero conflicto privado—no se preocuparon por los valores sociales envueltos y adoptaron la norma conocida como la regla de fuente colateral mediante la cual se sancionaba como bueno que el demandado satisficiese el importe total de los daños aun cuando el demandante hubiese recobrado la pérdida o parte de ella de otras fuentes.

Esa norma de la doble compensación ha sido severamente criticada por los autores. Realmente es una norma irracional. Repugna al buen sentido de justicia que se cobre una acreencia más de una vez, y en el plano social ello resulta en un costo adicional a la sociedad que la paga. Borrell Macía expresa lo siguiente:

---

(1) Maine, *Ancient Law,* ed. Beacon Press (1963), pág. 358; Seavey, *Principles of Torts,* 56 Harv. L. Rev. 72 (1942). Este ensayo, un clásico en su campo, aparece también publicado en *Landmarks of Law,* Henson, ed. (1960), pág. 377. W. Friedmann, *Law in a Changing Society* (1959), Cap. 5 titulado "Tort and Insurance"; Pound, *Introduction to the Philosophy of Law,* ed. rev. (1953) Cap. 4 titulado "Liability"; James, *Accident Liability Reconsidered,* 57 Yale L.J. 549 (1948), publicado también en Cohen and Cohen, *Readings in Jurisprudence and Legal Philosophy* (1951), pág. 266; Puig Brutau, *Fundamentos de Derecho Civil,* Tomo 2, Vol. 2 (1956), pág. 659 y ss.; Castán, *Derecho Civil Español, Común y Foral,* Tomo 4, 9na. ed. rev. (1961), pág. 836 y ss.; Prosser, *Law of Torts,* 4ta. ed. (1971), pág. 14.

"De acuerdo con los principios que regulan la materia de reparación e indemnización de daños y perjuicios, en materia de seguros, el perjudicado no puede beneficiarse del accidente por él sufrido. La misión del seguro es reparar."

James discute la cuestión ampliamente y concluye que el perjudicado debe poder escoger entre los distintos medios de compensación a su alcance, pero sin que pueda recibir doble compensación. Esa nos parece la mejor norma. El perjudicado podrá demandar al que le causó el daño o a su asegurador, o a ambos, y a cualquiera otra persona o entidad que estime que viene obligada a reparar el daño, pero no deberá recibir compensación en exceso de la justa y adecuada en relación con el daño causado.

También opina James que el asegurador—salvo pacto en contrario, presumimos—no debe poder repetir contra el causante del daño. Explica que la compensación no es un castigo —a menos que se justifiquen daños ejemplares—sino que es una reparación por el daño causado. También señala que no constituye ningún bien social el que el demandado satisfaga daños que ya han sido compensados. Por el contrario, como hemos señalado, socialmente eso constituye un gasto adicional injustificado y adicionalmente gravoso a la sociedad que ha de pagarlo. James es de opinión que cuando hay seguros la pérdida debe recaer en el asegurador y ahí detenerse, pues las compañías de seguro son las que están precisamente en el negocio de asegurar riesgos y son las distribuidoras de riesgos por excelencia. James, *Social Insurance and Tort Liability: The Problem of Alternative Remedies*, 27 N.Y.U.L. Rev. 537 (1952).

Para otras discusiones sobre el problema puede verse: Ganz, *Mitigation of Damages by Benefits Received*, 25 Modern L. Rev. 559 (1962); West, *The Collateral Source Rule Sans Subrogation: A Plaintiff's Windfall*, 16 Okla. L. Rev. 395 (1963); Kimball and Davis, *The Extension of Insurance Subrogation*, 60 Mich. L. Rev. 841 (1962); *The Collateral*

*Source Rule in the American Law of Damages*, 46 Mich. L. Rev. 669 (1962); Schwartz, *The Collateral Source Rule*, 41 B.U.L. Rev. 348 (1961); *Unreason in the Law of Damages: The Collateral Source Rule*, 77 Harv. L. Rev. 731 (1964); Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Calif. L. Rev. 1478 (1966); Sedler, *The Collateral Source Rule and Personal Injury Damages: The Irrelevant Principle and the Functional Approach*, 58 Ky. L.J. 36 y 161; Cooper, *A Collateral Benefits Principle*, 49 Can. B. Rev. 501 (1971); Harper and James, *The Law of Torts*, Vol. 2, sec. 25.22 (1956).

En Puerto Rico habíamos tocado solamente tangencialmente el problema. En *Reyes* v. *Aponte*, 60 D.P.R. 890 (1942), a la pág. 896, expresamos que a pesar de que el principal del demandante le había pagado a éste su sueldo durante los dos meses que no pudo trabajar, el demandante también podía reclamarlo del demandado. Se utilizó allí como razonamiento que el hecho de que el demandante hubiese cobrado sus salarios no debía beneficiar al que causó el daño. Por lo tanto se permitió la doble compensación. Se ve en dicho caso un enfoque incorrecto del problema. La reclamación en daños no tiene el propósito de castigar al demandado sino de resarcir o compensar al que sufrió el daño. *"Make him whole,"* dice la antigua frase inglesa. Una vez compensado el perjudicado, no hay razón en justicia ni en derecho para que sea compensado otra vez.

Tres años después, en *Rivera* v. *Rossi*, 64 D.P.R. 718, 721 (1945), un caso de daños causados por un embargo hecho por error, el Tribunal tuvo ocasión de expresar que "La concesión de daños, como dijo la corte inferior, no es un castigo que se impone al que debe pagarlos, sino una compensación al que los ha sufrido, y por consiguiente debe éste probar su existencia para que le puedan ser concedidos."

Posteriormente, en *Pereira* v. *Commercial Transport Co.,*

70 D.P.R. 641 (1949), se resolvió correctamente, a la pág. 644, que habiéndose pagado al demandante su salario por las dos semanas que no había trabajado no correspondía condenar al apelante a pagarlas de nuevo. Pero dos páginas más adelante, en reconsideración, se resolvió lo contrario a base de una mera mención del citado caso de *Reyes* v. *Aponte,* supra. Igual hicimos en *Goose* v. *Hilton Hotels,* 79 D.P.R. 523 (1956).

Sobre esta materia de daños el precepto rector lo contiene nuestro Código Civil en su Art. 1802, el cual es extraordinariamente claro. Dispone que "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Estamos empeñados en una reforma judicial y en un deseo de depurar nuestro Derecho. Como se ha señalado antes, vastas zonas de nuestro derecho civil se han cedido, sin razón válida para ello, al derecho casuístico norteamericano, por descuido o por indebido aprecio de los valores envueltos. Esta tendencia "sonámbula" e increíblemente despreocupada debe detenerse. Es deber tanto de jueces como de abogados así hacerlo. ([2])

El caso de autos presentaba una buena oportunidad para restablecer a sus auténticos términos el citado Art. 1802 extirpando de nuestro Derecho el concepto de la *"collateral source rule,"* regla que no tiene justificación racional ni moral.

---

([2]) Véase Trías Monge, *Derecho y Justicia en Puerto Rico,* 25 Rev. C. Abo. P.R. 417, 418 (1965).