EPIFANIO BERRÍOS, querellante, recurrente y recurrido, *v.* EASTERN SUGAR ASSOCIATES, (*un trust*), ETC., querellada, recurrida y recurrente.

Número: 12631    Resuelto: 2 de abril de 1962

120

*Epifanio Berríos,* en su propia representación como querellante, recurrente y recurrido; *Fiddler, González, Guillemard* y *Rodríguez* (*Eduardo Negrón Rodríguez* en el alegato), abogados de la querellada, recurrida y recurrente.

Sala integrada por el Juez Presidente Señor Negrón Fernández, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 21 de abril de 1952 el obrero Epifanio Berríos dirigió una comunicación al Departamento del Trabajo señalando que la empresa Eastern Sugar Associates, para la cual prestaba servicios como marinero de un remolcador en la playa de Humacao, no estaba cumpliendo con las disposiciones de ley aplicables en cuanto se refiere al pago del salario real-

mente devengado.(¹)    Aproximadamente cincuenta días después, el patrono notificó a Berríos, quien a la sazón contaba sesenta y ocho años de edad, que el día último de dicho mes cesaría en el empleo para que pudiera acogerse a los beneficios para los casos de vejez provistos por la Ley de Seguro Social Federal, 42 U.S.C.A. sec. 401 et seq.   A partir del 30 de junio de 1952, y salvo ciertas ocasiones esporádicas en que trabajó durante el siguiente semestre, el querellante no continuó prestando servicios a su antiguo patrono.

A partir del mes de agosto de 1952, el reclamante comenzó a recibir personalmente pagos mensuales de beneficios para la vejez de sesenta y tres dólares ($63.00) y una asignación adicional de sesenta y ocho dólares ($68.00) para sus hijos menores.    En octubre de 1955 el beneficio mensual personal fue aumentado a setenta dólares con diez centavos ($70.10). Es decir, Berríos recibía mensualmente ciento treinta y un dólares ($131.00) hasta octubre de 1955 y ciento treinta y ocho dólares con diez centavos ($138.10) desde esa fecha hasta la de la celebración del juicio ante el tribunal de instancia.

Cerca de treinta meses después de haber cesado en el empleo, en 23 de diciembre de 1954, Berríos inició, por derecho propio, una querella contra la Eastern Sugar Associates(²) alegando que había sido despedido ilegalmente, y solicitó a) se ordenara su reposición en el empleo que había tenido con dicho patrono, o en uno sustancialmente similar; y, b) se condenara a éste a satisfacerle los daños causados "por concepto de salarios no pagados" a razón de $34.32 semanales desde la cesantía y por "los sufrimientos morales y momentos de angustia y desesperación" que había experimentado.   Invocó

---

(¹) Esta comunicación fue el inicio de la gestión que culminó en una intervención judicial finalmente resuelta en *Berríos* v. *Eastern Sugar Associates*, 79 D.P.R. 688 (1956).   La querella judicial se inició en 18 de agosto de 1952, o sea, *después* de haber cesado Berríos en el empleo.

(²) En el curso de la vista celebrada se enmendaron las alegaciones para sustituir como parte demandada a la Fajardo Eastern Sugar Associates en lugar de la demandada original.   Así se ordenó.

como fuente de su reclamación las disposiciones de la sección 19 de la Ley de Salario Mínimo de 1941—Ley Núm. 8 de 5 de abril de 1941, pág. 303, 29 L.P.R.A. sec. 230.

No es hasta el día 18 de octubre de 1956 que se ordena por el tribunal a quo la citación de la parte demandada.[3] El diligenciamiento se verificó el día 26 siguiente. De todo lo relatado resulta que se apercibió al patrono del interés del obrero en la reposición en el empleo cuando ya habían trancurrido 4 años y 4 meses de la cesantía y 1 año y 10 meses de la iniciación de la acción. Ya para esta fecha Berríos había cumplido 72 años de edad.

Después de celebrar la vista correspondiente el tribunal de instancia dictó sentencia con los siguientes pronunciamientos: ordenó a la querellada 1) a reponer al querellante en su cargo de marinero o en uno sustancialmente igual; 2) a satisfacerle la suma de $34.32 por cada una de las semanas transcurridas desde el día 26 de octubre de 1956—fecha en que se diligenció la orden de citación—hasta la fecha en que fuere repuesto o se le ofreciera la reinstalación; y, c) a pagar la suma de 500 por concepto de honorarios de abogado del querellante. Ambas partes apelaron.

La sección 19 de la Ley de Salario Mínimo de 1941 a que nos hemos referido leía como sigue:[4]

"Todo patrono que despida, suspenda, rehuse admitir o restituir, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga condiciones de trabajo más onerosas a un empleado o ex empleado suyo, discrimine en cualquier forma o amenace cometer contra él cualquiera de esos actos para evadir el cumplimiento de cualquier decreto o porque dicho empleado o

---

[3] En 21 de septiembre de 1955 se dictó sentencia de archivo de la querella a tenor con las disposiciones de la Regla 11 de la Administración de los Tribunales, porque el pleito había permanecido inactivo por más de seis meses. Esta sentencia se dejó sin efecto posteriormente, pero transcurrieron trece meses antes de que el querellante gestionara la orden de citación de la parte demandada.

[4] Disposiciones idénticas se incorporaron a la Ley de Salario Mínimo de 1956 mediante la sección 24 de la Ley Núm. 96 de 26 de junio de 1956, pág. 623, 29 L.P.R.A. (Supl.) Sec. 245 W.

ex empleado se haya querellado, haya ofrecido o prestado testimonio o se disponga a ofrecerlo o prestarlo, en alguna investigación, querella, reclamación, audiencia o procedimiento administrativo o judicial que se lleve o haya llevado a cabo en relación o para la aplicación de este capítulo o de cualquier decreto, reglamento, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro especial de la Junta de Salario Mínimo, incurrirá en un delito menos grave, y una vez convicto, se le impondrá multa de cien (100) a mil (1,000) dólares, o cárcel por término de un mes a seis meses, o ambas penas a discreción del tribunal.

"Se presumirá que cualquiera de los mencionados actos obedece a la formulación de querella, ofrecimiento o prestación de testimonio, disposición de ofrecerlo o darlo, creencia de que se ofrecerá o prestará, o servicio en la Junta, según sea el caso, cuando el patrono haya realizado el acto antes de transcurrir seis meses desde la terminación de la investigación, querella, reclamación, audiencia o procedimiento, o funciones de la Junta, a menos que demuestre satisfactoriamente que le había manifestado al empleado o ex empleado su propósito, que en verdad tuviera, antes de existir la investigación, querella reclamación, audiencia o procedimiento, o la propuesta para formar parte de la Junta.

"El patrono deberá reponer en su empleo al trabajador o cesar en la continuación del acto de que se trate. Para obligarlo a cumplir esa obligación, los Tribunales Superior y de Distrito conocerán concurrentemente de procedimientos sencillos, rápidos y preferentes, en los que se dará oportunidad de ser oídas a las partes interesadas y a la Junta. En dichos procedimientos se investigarán también los daños que el acto haya causado al empleado o ex empleado, a cuyo favor se dictará sentencia por el doble del importe de los daños causados, además de concedérsele costas y una suma razonable, que nunca bajará de cincuenta (50) dólares, para honorarios de abogados."

1. La ley establece una presunción cuando el patrono ha despedido, suspendido, rehusado admitir o restituir al obrero, o le ha reducido el salario, rebajado en categoría, aumentado las horas de labor o impuesto condiciones más onerosas de trabajo, siempre que este acto haya tenido lugar dentro de seis meses de la terminación de la investigación,

querella, reclamación, audiencia o procedimiento, o funciones de la Junta de Salario Mínimo.   En *Cadilla* v. *Condado Beach Hotel*, 70 D.P.R. 911 (1950) definimos el alcance de esta presunción e indicamos que se trata de una de carácter controvertible, y que una vez establecido que el acto discriminatorio había ocurrido dentro del término de seis meses a que se refiere la ley, incumbía al patrono demostrar que dicho acto no respondía a propósito alguno de discrimen.   En *Limardo Costa* v. *Eastern Sugar Associates*, 84 D.P.R. 269 (1961), en que se trataba de un caso de despido ocurrido después de la radicación de una reclamación de salarios, resolvimos que "Realmente todo lo que se requiere es que el patrono demuestre satisfactoriamente que el cambio en las condiciones de trabajo no constituye una represalia por la iniciación del pleito en reclamación de salarios", y que "pueden existir circunstancias en que se haya operado un cambio desfavorable al obrero y, sin embargo, no existir causa de acción."   En el presente caso el tribunal a quo aplicó la presunción después de considerar y resolver adversamente la defensa interpuesta por el patrono al efecto de que la cesantía del querellante obedeció a una política de la empresa de retirar del empleo a todos los empleados que eran elegibles para recibir los beneficios de la Ley de Seguro Social Federal.   Tanto las partes como el tribunal consideraron la comunicación de fecha 21 de abril de 1952 dirigida por el obrero al Departamento del Trabajo como punto de partida para la aplicación de la presunción por ocurrir el acto discriminatorio dentro del término de seis meses de haberse cursado la referida carta.

El propósito legislativo original al aprobar la sección 19 de la Ley de Salario Mínimo fue fomentar la comparecencia de obreros y empleados para la prestación de testimonio en los procedimientos relacionados con la fijación de salarios mínimos y el establecimiento de condiciones de trabajo en las distintas industrias y actividades.   Luego en 1945—Ley Núm. 217 de 11 de mayo de 1945, pág. 681—se amplió el campo de aplicación de la sección y se adicionaron las dis-

posiciones que contienen la sanción civil, véase, *Limardo Costa* v. *Eastern Sugar Associates*, 84 D.P.R. 269 (1961), respondiendo al deseo de evitar las consecuencias de actos patronales de discrimen contra los obreros que reclamaran, bien administrativa o judicialmente, el cumplimiento de los beneficios de leyes o reglamentos laborales o decretos de salario mínimo. Hasta cierto punto esto constituyó una incursión en el campo de la negociación colectiva. De todas formas evidenció la política pública de evitar actos que pudieran atribuirse a un propósito de discrimen o represalia, aunque con ello se limitara por disposición de ley la facultad del patrono para contratar o despedir sus obreros y empleados. Hasta este momento la única consecuencia legal que se imponía al patrono por la cesantía sin justa causa era el pago al obrero del sueldo o salario correspondiente a un mes, por concepto de indemnización, según proveía la Ley Núm. 84 de 12 de mayo de 1943, pág. 197.[5] Pero a partir de la aprobación de la Ley 217 de 1945, supra, estatuye además, la reposición en el empleo cuando estén presentes ciertas circunstancias que revelen que se trata de un despido discriminatorio. La propia ley presupone una actuación rápida, cuyo fin es proteger inmediatamente al obrero perjudicado, al determinar que para obligar al patrono a reponer al obrero o cesar en la conducta discriminatoria los tribunales conocerán de "procedimientos sencillos, rápidos y preferentes". No puede haber sido la intención legislativa estatuir un remedio para ser ejercitado por el obrero en cualquier momento después del cese en la prestación de los servicios, no importa cuan remota haya sido la fecha del despido. Interpretando una disposición similar contenida en la Ley de Servicio Selectivo de 1940, 50 U.S.C.A. App. sec. 308(e), que requiere la reposición de los veteranos a los empleos que

---

[5] Esta ley fue suplantada por la Núm. 50 de 20 de abril de 1949, pág. 127, 29 L.P.R.A. sec. 183, que además impuso al patrono en virtud de su artículo 3 la obligación de alegar en su contestación los hechos que dieron margen al despido y probar que éste estuvo justificado.

tenían a la fecha de su reclutamiento, se dijo en *Daniels* v. *Barfield*, 77 F. Supp. 283, 285 (Pa. 1948) que "La esencia misma de esta disposición de la Ley es la de rapidez. La demora no solo priva al tribunal de la oportunidad de prestar ayuda inmediata a quienes se intenta proteger sino que coloca al demandado en una posición desventajosa al inducirle un falso sentido de seguridad. Opino que la demora del demandante [siete meses para reclamar su derecho a reposición a partir del licenciamiento] fue irrazonable y equivale a consentir en la actuación de los demandados, y en su consecuencia, constituye una renuncia a su derecho a ser repuesto en el cargo que ocupaba e incidentalmente a ser compensado por los salarios y beneficios no percibidos." Véanse además, *Leonick* v. *Jones & Lauchlin Steel Corporation*, 258 F.2d 48 (CA 2, 1958); *Donner* v. *Levine*, 232 F.2d 185 (C.A. 2 1956); *Hicks* v. *United States Radiator Company*, 127 F. Supp. 429 (Mich. 1955); *Noble* v. *International Nickel Co.*, 77 F. Supp. 352 (W.Va. 1948); contra, *Thompson* v. *Chesapeake & O. Ry. Co.*, 76 F. Supp. 304 (W.Va. 1948); cfr. *Dacay* v. *Bethlehem Steel Co.*, 66 F. Supp. 161 (Mass. 1946). Tampoco está vedado al juzgador investigar la buena fe del reclamante, *Levine* v. *Berman*, 178 F.2d 440 (C.C.A. 7, 1949). Precisamente la intención del reclamante de recobrar su antiguo empleo se manifestó para todos los fines prácticos 4 años y 4 meses después de la cesantía, todo ello por claras razones de conveniencia personal para el supuesto perjudicado. Veamos.

Según hemos expuesto anteriormente Berríos ha venido percibiendo los beneficios por vejez provistos por la Ley de Seguro Social Federal desde un mes después de la fecha en que quedó cesante. La sección 404.408 de los reglamentos pertinentes, 20 C.F.R. (1961), págs. 405–406,(6) dispone

---

(6) La versión en inglés de la parte citada del reglamento federal lee como sigue:

"§404.408. *Deductions imposed because an individual works.*

*(a) When deductions imposed. Deductions are to be made from any benefit or benefits payable to an individual and from any wife's,*

128

como sigue, en la parte que cubre la presente situación:

"Sec. 404.408—*Deducciones que se harán cuando un beneficiario trabaje.*

(a) *Cuándo se harán deducciones.* Se harán deducciones de todo beneficio o beneficios pagaderos a un beneficiario y de todos los beneficios por seguro concedidos a una esposa, hijo menor, o esposo, pagaderos a dicha esposa, hijo menor, o esposo debido a los jornales o ingresos derivados de un negocio propio de dicho beneficiario, durante cualquier mes:

(1) Anterior a septiembre de 1962, durante el cual dicho beneficiario *menor de 75 años de edad* presta servicios por un jornal . . . mayor de $50, o

(2) Posterior a agosto de 1952 y anterior al primer mes del primer año contributivo del beneficiario que comience después de 1954, durante el cual dicho beneficiario era menor de 75 años de edad, con respecto a meses anteriores a 1955; o *menor de 72 años de edad,* con respecto a meses posteriores a 1954, y durante el cual presta servicios por un jornal . . . mayor de $75, o

. (3) Durante el cual a dicho beneficiario se le atribuyan . . . ingresos netos derivados de un negocio propio en exceso de $50 o $75, según sea el caso, o

(4)  .  .  .  .  .

(5)  .  .  .  .  .

---

*child's, or husband's insurance benefits payable to his wife, child, or husband with respect to such individual's wages and self-employment income for any month:*

*(1) Prior to September 1952, in which such individual under age 75 renders services for wages . . . or more than $50, or*

*(2) After August 1952 and prior to the first month of individual's first taxable year beginning after 1954, in which such individuals was under age 75, with respect to months prior to 1955, or under age 72, with respect to months after 1954, and in which he renders services for wages . . . or more than $75, or*

*(3) In which such individual is charged . . . net earnings from self-employment of more than $50 or $75, as the case may be, or*

*(4)  .      .      .      .      .      .      .      .*

*(5)  .      .      .      .      .      .      .      .*

*(b) Amount of deductions. The amount to be deducted shall be equal to the benefit or total of benefits payable to the individual and to the wife's child's or husband's benefits payable to such individual's wife, child, or husband, on the basis of his wages and self-employment income, in the month in which the event specified in any of the subparagraphs of paragraph (a) of this section occurred."*

(b) *Monto de las deducciones.* La cantidad deducible será igual al *beneficio* o *total de beneficios* pagadero al beneficiario y al beneficiario de su esposa, hijo menor o esposo pagadero a la esposa, hijo menor o esposa de tal beneficiario, a base de sus jornales e ingresos derivados de un negocio propio, en el mes durante el cual ocurra el suceso especificado en cualquiera de los incisos del párrafo (a) de esta sección." (Bastardillas nuestras.) ■

¿En qué forma afecta esta reglamentación al querellante? Hasta que Berríos cumplió 72 años de edad, o sea en 1956, si hubiese trabajado en su antiguo empleo su paga mensual excedería de $75 y, por tanto, hubiese perdido todos los beneficios del seguro social por vejez. Es por eso que no se emplaza a la demandada hasta después que el reclamante cumplió los 72 años de edad, ya que, de acuerdo con el reglamento citado, después de llegar a esta edad no se hace deducción alguna de los pagos de beneficios. Para hacer corta una historia larga, nos aventuramos a afirmar que este pleito no se hubiera iniciado si en septiembre de 1954 no se hubiera enmendado la legislación federal para permitir a un beneficiario mayor de 72 años recibir los beneficios del seguro social, aún cuando tuviera otros ingresos. De todo lo expuesto se deduce que el querellante, por su conducta, efectivamente aceptó su retiro en junio de 1952, y que no procede ordenar su reposición en el empleo. (⁷) ■

Aún cuando resolviéramos que procede la reposición de Berríos en su empleo, nada hay en la sección 19 que requiera ineludiblemente la imposición al patrono del pago de los jornales que dicho empleado dejó de percibir bien desde la fecha

---

(⁷) La Ley Núm. 100 de 30 de junio de 1959, pág. 300, 29 L.P.R.A. (Supl.) sec. 146 y ss., redactada en términos muy parecidos a la sección 19 de la Ley de Salario Mínimo, se dirige a proteger los derechos del empleado mediante la prohibición de discrimen por razón de edad avanzada. Reconoce la existencia de responsabilidad civil por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante del empleo y dispone que el tribunal *podrá* ordenar al patrono que reponga en su empleo al trabajador. Define "edad avanzada" como la edad comprendida entre los 30 y los *65* años, 29 L.P.R.A. sec. 151.

de la cesantía, o de la radicación de la querella o la citación de la parte demandada. Todo cuanto se dispone es que el tribunal investigará los daños que el acto discriminatorio haya causado al empleado y que se dictará sentencia por el doble de los daños causados. Concebiblemente para la fijación de estos daños puede tomarse en consideración el importe de los ingresos dejados de percibir por el obrero, o sea el elemento de lucro cesante, pero si éste ha obtenido otro empleo con un salario sustancialmente igual, o, como en el presente caso tiene otros ingresos, incluyendo los beneficios de seguro social, los daños serían puramente nominales. Aún en aquellas situaciones en que la ley autoriza expresamente la reposición con abono de la paga que el obrero hubiese devengado —artículo 9(b) de la Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 70b—hemos resuelto que ésta es una medida reparadora, y no punitiva, y que el patrono puede deducir cualquier suma que el obrero perjudicado hubiese percibido por su trabajo con otros patronos. *Rivera* v. *Junta de Relaciones del Trabajo*, 70 D.P.R. 5, 13–14 (1949). Véase además, *John S. Doane* v. *Martin*, 164 F.2d 537 (CCA 1, 1947); *Boston & M.R.R.* v. *Bentuvo*, 160 F.2d 326 (C.C.A. 1, 1947); *Mitchell* v. *Dyess*, 180 F. Supp. 852 (Ala. 1960); y especialmente, *Spilky* v. *Rein*, 11 Labor Cases 63, 381 (1946), y anotaciones en 144 A.L.R. 401 (1943) y 133 A.L.R. 1237 (1941). *Marshall Field & Co.* v. *N.L.R.B.*, 318 U. S. 253 (1942) y *N.L.R.B.* v. *Guillet Gin Co.*, 340 U.S. 361 (1950) no son aplicables pues las órdenes de reponer al obrero por despido discriminatorio debido a actividad gremial claramente disponían que solamente podrían deducirse del abono de la paga las cantidades que éste hubiese percibido por concepto de salarios. Como cuestión de hecho, el querellante ha estado recibiendo mensualmente ingresos sustancialmente iguales a los que hubiese percibido como salario de la querellada de haber continuado trabajando.

*Considerados los hechos particulares del presente caso, y por las razones expuestas, se revocará la sentencia dictada por el Tribunal Superior, Sala de Humacao, en 2 de diciembre de 1958, y se desestimará la querella.*

El Juez Asociado Señor Dávila concurre en el resultado.