EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel A. Silva Soto<br><br>Peticionario<br><br>v.<br><br>Suiza Dairy Corporation<br><br>Recurrida | Certiorari<br><br>2023 TSPR 14<br><br>211 DPR ___ |

Número del Caso:  CC-2022-0252


Fecha:  13 de febrero de 2023


Tribunal de Apelaciones:

    Panel VI


Abogados de la parte peticionaria:

    Lcdo. Carlos A. Padilla Vélez
    Lcda. Alina M. Ortega César


Abogado de la parte recurrida:

    Lcdo. Julio Iván Lugo Muñoz


Materia: Derecho Laboral – Conforme a la doctrina de fuente colateral, los beneficios por discapacidad recibidos del Programa de Seguro por Incapacidad del Seguro Social no deben ser deducidos de la paga atrasada por concepto de despido injustificado.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel A. Silva Soto

    Peticionario

      v.

                            CC-2022-0252

Suiza Dairy Corporation

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres.

En San Juan, Puerto Rico, a 13 de febrero de 2023.

Debemos resolver si conforme a la doctrina de fuente colateral los beneficios por discapacidad recibidos del Programa de Seguro por Incapacidad del Seguro Social (SSDI, por sus siglas en inglés) ("*Social Security Disability Insurance*") deben ser deducidos de la paga atrasada por concepto de despido injustificado. Contestamos en la negativa. Máxime, en este caso en el cual el patrono causó el daño que provocó la incapacidad por la que se recibieron los beneficios del SSDI. Esto hace evidente que el beneficio de seguro social que se recibió por la depresión sufrida tras el despido no se debe deducir de la cuantía por salarios dejados de percibir.

I

El Sr. Manuel A. Silva Soto laboraba como vendedor de Suiza Dairy Corporation (Suiza Dairy) hasta que fue separado permanentemente de empleo y sueldo el 27 de enero de 2010, por unas supuestas irregularidades en las facturas y pagos procesados. Así las cosas, el señor Silva Soto se sometió a un procedimiento de arbitraje.

El 18 de diciembre de 2013, se emitió un laudo de arbitraje. El árbitro concluyó que "[e]l despido no estuvo justificado. Sólo procedía la amonestación escrita que dispone el reglamento disciplinario. Se ordena el pago de todos los haberes dejados de percibir durante el tiempo en que ha estado despedido". Ap. Sol. Cert., pág. 147. Tras varios trámites procesales ese laudo advino final y firme.

Cónsono con esto, el 23 de julio de 2018, el señor Silva Soto incoó un pleito independiente mediante una *Solicitud urgente de cumplimiento de laudo de arbitraje emitido el 18 de diciembre de 2013 y orden sobre solicitud de documentos*. Pidió, entre otras cosas, el pago de los salarios y beneficios marginales dejados de percibir desde su despido.

Suiza Dairy compareció e indicó que el laudo no dispuso la fórmula para calcular la paga atrasada. Además, argumentó que el señor Silva no tenía derecho de recibir los salarios y beneficios marginales solicitados. A su entender, el señor Silva Soto fue declarado incapacitado por la Administración del Seguro Social (SSA, por sus siglas en inglés) en enero

de 2011, por lo que la paga atrasada solo debía computarse hasta el momento en que estuvo apto para trabajar.

Posteriormente, el Tribunal de Primera Instancia emitió una sentencia. Entre otras cosas, determinó que procedía el pago de los salarios y beneficios marginales dejados de devengar. Asimismo, no le dio la razón a Suiza Dairy en cuanto al argumento de que se debían deducir los beneficios del SSDI de la paga atrasada como indemnización por despido injustificado. Resolvió que la incapacidad del señor Silva Soto por depresión severa fue causada por la conducta y actuación del patrono al despedirlo injustamente. Por consiguiente, aplicó lo expresado por el foro federal en Johnson v. Spencer Press of Maine, Inc., infra, para concluir que, como Suiza Dairy es responsable de las consecuencias de sus actos, no procedía restar los beneficios recibidos del seguro social de la paga atrasada.

Inconforme, Suiza Dairy presentó un recurso de apelación ante el Tribunal de Apelaciones. Señaló que el foro primario erró al adjudicarle responsabilidad por la incapacidad del señor Silva Soto. Alegó que procedía restar los beneficios de seguro social del cómputo de los haberes dejados de percibir.

Atendido el recurso, el 17 de febrero de 2022 el Tribunal de Apelaciones emitió una sentencia. En lo pertinente, determinó que los beneficios recibidos del seguro social se debían reducir de la paga atrasada, de manera que no se recibiera una doble compensación por el mismo concepto.

Para llegar a tal conclusión, se amparó en los precedentes de Berríos v. Eastern Sugar Associates, infra, y Zambrana García v. ELA et al., infra. El señor Silva Soto y Suiza Dairy solicitaron reconsideración, por separado, pero fueron denegadas.

Inconforme, el señor Silva Soto presentó una solicitud de certiorari ante este Tribunal. Sostuvo que el Tribunal de Apelaciones erró al modificar la sentencia del Tribunal de Primera Instancia para descontar las cuantías recibidas por los beneficios de seguro social de las partidas de paga retroactiva y salarios dejados de devengar. Argumentó que esta actuación es contraria a lo resuelto por este Tribunal en Santiago Ortiz v. Real Legacy et al., infra. Por último, alegó que procedía aplicar la doctrina de la fuente colateral.

Por su parte, Suiza Dairy arguyó que nuestra tradición civilista y el propósito reparador de los beneficios por incapacidad impiden que se aplique la doctrina de fuente colateral porque redundaría en una doble compensación. En suma, reiteró que en virtud de la determinación de incapacidad el señor Soto Silva no tenía derecho a recibir cuantía alguna por salarios dejados de devengar.

Expedido el recurso, con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

De entrada, en Zambrana García v. ELA et al., 204 DPR 328 (2020), reafirmamos que en caso de que se determine que

cierto despido ha sido en contra de la ley, procede que se descuente de la cantidad de salarios dejados de percibir cualquier compensación por trabajos obtenidos y realizados durante la cesantía en cuestión. Íd., pág. 336 (citando a Hernández v. Mun. de Aguadilla, 154 DPR 199, 209 (2001)). Véase, además, Torres Rivera v. Econo Rial, Inc., 208 DPR 346 (2021). Esto toma en cuenta que el pago de los salarios dejados de percibir tiene un propósito reparador, no punitivo, que busca colocar al empleado en la misma posición en la que hubiese estado de no haber sido despedido injustificadamente. Zambrana García v. ELA *et al.*, supra, pág. 337.

Por su parte, en Berríos v. Eastern Sugar Associates, 85 DPR 119, 130 (1962), este Tribunal determinó que se deben considerar los beneficios de seguro social por jubilación para determinar la cuantía concedida por concepto de salarios no devengados. La razón por la que hemos arribado a este resultado es que, de no descontar estos otros ingresos, el empleado despedido recibiría una doble compensación, lo que es contrario al carácter compensatorio del resarcimiento de los daños. Zambrana García v. ELA *et al.*, supra.

Sin embargo, la doctrina de la fuente colateral impide que el causante de un daño deduzca del importe de la indemnización la compensación o los beneficios que haya recibido el perjudicado de una tercera persona o entidad, no relacionada con el demandado. Futurama Import Corp. v. Trans Caribbean, 104 DPR 609, 611-612 (1976). En ese sentido,

esta doctrina es una excepción a la norma general de que los daños deben ser de carácter compensatorio solamente. <u>Toro v. Sánchez</u>, 141 F.Supp.2d 195, 196 (D. PR 2001). Además, el principio detrás de este precepto es que el causante del daño no debería beneficiarse del derecho de un demandante a los beneficios provenientes de un tercero que sufragan parte de los gastos que corresponden al causante del daño. James L. Branton, <u>The Collateral Source Rule</u>, 18 St. Mary's L.J. 883, 884 (1987).

En <u>Grayson v. Williams</u>, 256 F.2d 61, 65 (10mo Cir. 1958), el Tribunal federal para el Décimo Circuito de Apelaciones explicó:

> Where a part of a wrongdoer's liability is discharged by payment from a collateral source, as here, the question arises who shall benefit therefrom, the wrongdoer or the injured person. **No reason in law, equity or good conscience can be advanced why a wrongdoer should benefit from payment from a collateral source of damages caused by his wrongful act.** If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing. (Negrilla suplida).

Ahora bien, la doctrina de fuente colateral no aplica de manera automática. Véase, <u>Santiago Ortiz v. Real Legacy et al.</u>, 206 DPR 194, 217, esc. 50 (2021). Por eso, "en cada caso **debe examinarse el origen y propósito del beneficio colateral en cuestión**, para decidir entonces si éste se deducía o no de la indemnización que debía pagar el causante del daño". (Negrilla suplida). <u>Nieves Cruz v. UPR</u>, 151 DPR 150, 165-166 (2000). Así, para determinar que la acumulación

de compensaciones se justifica, corresponde identificar las circunstancias peculiares de cada caso según la naturaleza del daño, y examinar el origen y propósito del beneficio colateral. Futurama Import Corp. v. Trans Caribbean, supra, pág. 614.

Por lo anterior, la doctrina de la fuente colateral es inaplicable cuando el pago es de alguna manera atribuible al demandado. Véase, Nieves Cruz v. UPR, supra, pág. 165; Futurama Import Corp. v. Trans Caribbean, supra, págs. 611-612. No obstante, que algo sea de alguna manera atribuible al demandado no implica cualquier conexión entre el demandado y la fuente colateral.

En Santiago Ortiz v. Real Legacy *et al.*, supra, pág. 218, resolvimos que las partidas de liquidación por vacaciones, el pago por pensión prematura, y el plan de ahorro no están sujetas a ser deducidas de la indemnización por daños al amparo de la Ley Núm. 100. Allí razonamos que estas partidas no constituyen *per se* una compensación. Íd., págs. 217-218. Además, tomamos en cuenta que **no podemos convertir en un privilegio para el patrono una legislación que está llamada a favorecer al empleado**. Íd.

Además, en aquel momento adoptamos lo expresado por el Tribunal de Distrito Federal para el Distrito de Puerto Rico en Toro v. Sánchez, supra:

> Traditionally the rule that collateral benefits are not subtracted from the plaintiff's award of damages has been applied to benefits paid under: […] (4) **social legislation benefits such as social security, welfare, pensions,** and (4) benefits

received under certain retirement acts. The basic argument advanced for the rule's application is that a tort-feasor should not be allowed to escape the consequences of his wrongful act merely because his/her victim has received a benefit from a collateral source which would constitute a windfall to the defendant wrongdoer. Another argument in its favor is that in many instances the plaintiff has paid for these benefits in the form of insurance premiums or concessions in the wages he received because of such fringe benefits. (**Negrilla suplida**).

Igualmente, resaltamos lo resuelto en Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368 (1er Cir. 2004), donde el Tribunal de Apelaciones federal para el Primer Circuito interpretó la obligación de mitigar daños que tiene el empleado despedido injustificadamente. Ese tribunal reconoció que procede descontar de la paga atrasada cualquier ingreso que se pudiera obtener con diligencia razonable luego del despido, independientemente de si en efecto se obtuvo. Íd., pág. 379.[1] Véase, además, Ford Motor Co. v. EEOC, 458 US 219, 231-232 (1982).

No obstante, coligió que existe una excepción cuando el empleado es declarado incapacitado luego del despido. Johnson v. Spencer Press of Maine, Inc., supra, págs. 383-384. Declaró que "un empleado que no pueda mitigar daños debido a las acciones ilegales del patrono aún puede recibir la paga atrasada". (Traducción nuestra). Íd., pág. 384.[2] Ese foro

---

[1] El texto original reza: "Thus, awards of back pay are offset by any wages that could have been earned with reasonable diligence after the illegal discharge, regardless of whether they were actually earned".

[2] El texto original lee de la manera siguiente: "an employee who cannot extend the holding to Title VII; an employee who cannot mitigate damages because of the unlawful actions of the employer can still receive back pay".

concluyó que el patrono debe ser responsable de las consecuencias si su conducta provocó la incapacidad del empleado para mitigar los daños. Íd.

III

En esta ocasión nos corresponde determinar si el pago de beneficios por discapacidad, recibidos del programa de Seguro por Incapacidad del Seguro Social, debe ser deducido de la paga atrasada por despido injustificado. Esto requiere que evaluemos el origen y propósito del beneficio colateral en cuestión. Futurama Import Corp. v. Trans Caribbean, supra, pág. 614.

El propósito del SSDI es proveer fondos —a través de contribuciones de los empleados y los patronos— a personas de la tercera edad, no videntes y personas con discapacidad. 42 USC secs. 401-434. Véase, también, Social Security Handbook, 136.1, Sources of Funds for Social Security and Supplemental Security Income Benefits, Social Security (2022) (última visita, 21 de septiembre de 2022). Por consiguiente, podemos concluir que los beneficios del SSDI no se derivan por completo de Suiza Dairy, sino que surgen de fondos del Estado derivados de contribuciones. Por tanto, los pagos del beneficio del SSDI provienen, esencialmente, de una fuente independiente. Véase, N.L.R.B. v. Gullet Gin Co., 340 US 361 (1951).

Por otro lado, los pagos que el señor Silva Soto recibió del SSDI no se hicieron para liberar de responsabilidad a Suiza Dairy, sino para llevar a cabo una política de

mejoramiento social en beneficio de todo el Estado. Véase, Íd. Por ende, los beneficios del SSDI son de naturaleza distinta a la paga atrasada por despido injustificado.

Como vemos, no estamos ante un problema de doble compensación porque los beneficios del seguro social por discapacidad no buscan liberar a Suiza Dairy del pago de salarios, parte de sus obligaciones como patrono.[3] Recordemos que la SSA hizo la determinación de incapacidad del señor Silva Soto, tras diagnosticar que este tenía una depresión severa a partir de la fecha del despido. En ese sentido, no existe razón alguna por la que debamos beneficiar al causante del daño —Suiza Dairy—.

Aunque reconocemos que en el pasado expresamos que los beneficios de seguro social por jubilación se deben considerar para determinar la cuantía concedida por concepto de salarios no devengados, no ignoramos que tradicionalmente se ha aplicado la doctrina de fuente colateral a otros beneficios recibidos al amparo de legislación social, tal como el seguro social.[4] Véanse, Berríos v. Eastern Sugar Associates, supra; Toro v. Sánchez, supra, respectivamente.

Independientemente de esto, en este caso queda claro que los beneficios de seguro social que recibió el señor

---

[3] En ese sentido, resulta innecesario recurrir a Torres Rivera v. Econo Rial, Inc., supra; Zambrana García v. ELA et al., supra, para disponer de la controversia de autos.

[4] Sin embargo, toda vez que lo resuelto en Berríos v. Eastern Sugar Associates, supra, versó sobre el beneficio de seguro social por jubilación, y no sobre el beneficio de seguro social por incapacidad atinente al caso de autos, resulta innecesario reabrir esa discusión aquí.

Silva por causa de la depresión sufrida tras su despido no deben descontarse de la partida en concepto de paga atrasada, particularmente porque estos provienen de una fuente colateral independiente a Suiza Dairy. Además, según la naturaleza del daño que se sufrió y la razón de ser del beneficio que se recibió, aquí es improcedente la acumulación de compensaciones. Es decir, no cabe considerar estos beneficios para reducir la partida del pago de los salarios y beneficios dejados de devengar ya que se trata de emolumentos independientes. Por consiguiente, con la deferencia que merecen las determinaciones de hechos del foro primario, concluimos que no procede descontar los beneficios del SSDI de la paga atrasada. **Suiza Dairy no puede beneficiarse de lo que el empleado agraviado recibió de una fuente colateral producto de una política de mejoramiento social como lo es el SSDI.**

IV

Por los fundamentos anteriores, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la sentencia del Tribunal de Primera Instancia.

Se dictará Sentencia en conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel A. Silva Soto

    Peticionario

      v.

                           CC-2022-0252

Suiza Dairy Corporation

    Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 13 de febrero de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la sentencia del Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión particular de conformidad, a la que se unió el Juez Asociado señor Rivera García. El Juez Asociado señor Colón Pérez concurrió con el resultado y emitió las expresiones siguientes:

El Juez Asociado señor Colón Pérez **concurre** con el resultado alcanzado por una mayoría de este Tribunal en el presente caso y hace constar las siguientes expresiones:

Hoy esta Curia correctamente determina que, -- en el contexto de un empleado que es despedido ilegalmente --, no procede descontar de los salarios adeudados el pago de beneficios por discapacidad que éste

recibió del Programa de Seguro por Incapacidad del Seguro Social, mientras estuvo cesanteado del cargo de forma ilegal.

Lo anterior, es cónsono con lo sentenciado por el Juez que suscribe en *Zambrana García v. ELA et al.*, 204 DPR 328 (2020) (Colón Pérez, expresiones disidentes) y en *Torres Rivera v. Econo Rial, Inc.*, 208 DPR 346 (2021) (Colón Pérez, expresiones disidentes), donde señalamos que, tanto en el escenario del empleado público que es despedido ilegalmente, como en el del empleado de la empresa privada que también enfrenta dicho proceso, no procede descontar de los salarios adeudados aquellos ingresos que éste haya recibido de otras fuentes mientras se encontraba cesanteado del cargo ilegalmente.

Como previamente hemos indicado, resolver lo contrario tendría el efecto de "socavar injustificadamente los derechos de las personas trabajadoras y penalizar a aquel o aquella que no se cruza de brazos y busca remediar la situación económica en la que le colocó un despido ilegal". *Íd.*

Es, pues, por todo lo anterior, que respetuosamente concurrimos con el resultado al que llega hoy este Tribunal.


                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Manuel A. Silva Soto Peticionario v. Suiza Dairy Corporation Recurrida | | CC-2022-0252 |

Opinión particular de conformidad emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado Señor RIVERA GARCÍA.

En San Juan, Puerto Rico, a 13 de febrero de 2023.

Hoy resolvemos que un patrono que despide injustificadamente a su empleada o empleado no puede descontar, de la compensación por los haberes dejados de percibir, los beneficios por incapacidad que este último recibió bajo el Programa de Seguro Social por Incapacidad del Seguro Social (Seguro Social por Incapacidad). Consecuente con mi postura en controversias de similar naturaleza, avalo con mi voto de conformidad este razonamiento.

En ese sentido, el dictamen de este Tribunal constituye un paso en la dirección correcta en relación con los beneficios que no pueden restarse de la compensación otorgada a quien ha sido despedido en contra de la ley. Ahora bien, me veo en la obligación de emitir esta <u>Opinión particular de</u>

conformidad para reafirmar que, a mi juicio, lo que hoy resuelve este Tribunal —esto es, el descarte de fórmulas que resulten en descuentos en el pago de los salarios y beneficios marginales dejados de percibir— debe ser la norma y no la excepción. Veamos.

I

Es incuestionable que uno de los fines primordiales de nuestro ordenamiento jurídico laboral es proteger efectivamente el derecho del empleado o de la empleada a la tenencia de su empleo. Feliciano Martes v. Sheraton, 182 DPR 368, 379 (2011). Es por ello que, históricamente, la Asamblea Legislativa ha aprobado una multiplicidad de leyes con el propósito de instrumentar esta política laboral en Puerto Rico.

Particularmente, la Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA secs. 185a-185n (Ley Núm. 80), propende a la otorgación de unos "**remedios más justicieros y consubstanciales con los daños causados por un despido injustificado**" con el propósito de desalentar la incidencia de este tipo de prácticas.[1]

Indudablemente, la ruptura injustificada de una relación laboral por actos de un patrono en contra de su

---

[1] (Negrillas suplidas). Feliciano Martes v. Sheraton, supra, pág. 379 (citando la Exposición de Motivos de la Ley Núm. 80, supra, 1976 Leyes de Puerto Rico 268). Véase, también: Vélez Cortés v. Baxter, 179 DPR 455, 465 (2010); Díaz v. Wyndham Hotel Corp., 155 DPR 364 (2001); Jusino et als. v. Walgreens, 155 DPR 560, 571 (2001); Vélez Rodríguez v. Pueblo Int'l, Inc., 135 DPR 500, 510 (1994)).

empleada o empleado ocasiona en este último un daño sustancial en la medida en que la pérdida de empleo implica, en muchas ocasiones y entre otras consecuencias, la desaparición de su único medio de sustento económico. Orsini García v. Srio. de Hacienda, 177 DPR 596, 643 (2009). Al respecto, "[s]e ha documentado que algunos de los efectos morales más comunes que provoca [un despido] son: 'la ansiedad; el fuerte daño a la autoestima; los sentimientos de culpa; el deterioro del autoconcepto; la **depresión** y el abandono'".[2]

Es por ello que en el pasado he reconocido férreamente que, en aquellos casos de despidos ilegales en los que se incluya una compensación por haberes dejados de percibir, no se debe efectuar descuento alguno por los ingresos que el empleado o la empleada obtuvo por otros medios mientras duró la cesantía. Véase, Torres Rivera v. Econo Rial, Inc., 208 DPR 346, 369 (2021) (Opinión disidente del Juez Asociado Señor Estrella Martínez) (en oposición a que a un empleado del sector privado despedido injustificadamente se le dedujera de su compensación el beneficio por desempleo otorgado por el Estado y la compensación que ganó en otro trabajo); Zambrana García v. ELA et al., 204 DPR 328, 343-347 (2020) (Opinión disidente del Juez Asociado Señor Estrella Martínez); Acevedo Sepúlveda v. Depto. Salud, 191 DPR 28, 53-76 (2014) (Opinión de conformidad en parte y

---

[2](Negrillas y énfasis suplidos). Orsini García v. Srio. de Hacienda, supra, (citas omitidas).

disidente en parte del Juez Asociado Señor Estrella Martínez) (en ambos casos, en desacuerdo con el uso del precedente de Hernández v. Mun. de Aguadilla, 154 DPR 199 (2001) como fuente de apoyo para justificar que se redujeran de la indemnización concedida a los empleados del sector público despedidos ilegalmente los salarios que obtuvieron en otros empleos). El fundamento para mi discrepancia en los casos antes citados radica en que, desde mi perspectiva, resulta en una injusticia carente de base legal el que una empleada o un empleado que sufrió un daño con el despido, que no se cruzó de brazos y logró obtener ingresos privados para paliar el golpe de la cesantía, sea castigado nuevamente con el descuento en su indemnización de los beneficios del desempleo o lo devengado en otro empleo en la esfera privada por constituir una alegada doble compensación. **Reitero que en esos contextos no existe doble compensación alguna prohibida por ley.**

Ante ese cuadro y consecuente con mis pronunciamientos previos, opino que este Tribunal no debe limitarse a acudir selectivamente a la doctrina de la fuente colateral para evitar tales injusticias. Como es conocido, esencialmente la doctrina de la fuente colateral "impide al causante de un daño deducir del importe de la indemnización de la cual responde, la compensación o beneficios que haya recibido el perjudicado de una tercera persona o entidad, esto es, de una fuente no relacionada con el demandado". Futurama Import Corp. v. Trans Caribbean, 104 DPR 609, 611-612 (1976). Claro

está, al auscultar si cierto beneficio debe restarse o acumularse a la indemnización correspondiente, se evalúan: (1) las circunstancias particulares que provocaron el daño, y (2) el origen y propósito del beneficio o la compensación colateral. Íd., pág. 612. Véase, además, Nieves Cruz v. U.P.R., 151 DPR 150, 165-166 (2000).

Así pues, al amparo de esta doctrina, hoy reconocemos correctamente que no procede descontar de la indemnización por el cesanteo injustificado los beneficios del Seguro Social por Incapacidad que recibió el señor Silva Soto a causa de la depresión severa que sufrió tras su despido. **No puede ser de otro modo.**

Según se reconoce en la Opinión que hoy suscribe este Tribunal, los beneficios del Seguro Social por Incapacidad que recibió el señor Silva Soto "no se hicieron para liberar de responsabilidad a Suiza Dairy", pues su "naturaleza [es] distinta a la paga atrasada por despido injustificado".[3] Ello, por razón de que tales pagos "provienen, esencialmente, de una fuente independiente" como parte de "una política de mejoramiento social en beneficio de todo el Estado" que no tiene como fin "liberar a Suiza Dairy del pago de salarios, parte de sus obligaciones como patrono".[4]

Ciertamente, la doctrina de la fuente colateral impide que se le reduzca al empleado el beneficio recibido por concepto de Seguro Social por Incapacidad como consecuencia

---

[3]Véase, Opinión de este Tribunal, págs. 9-10.

[4]Íd.

del daño provocado por el despido injustificado realizado por el patrono. **Adviértase que, bajo ningún escenario, es necesario demostrar un nexo causal entre el daño sufrido y el motivo por el cual se concedió el seguro social para que sea improcedente el descuento en los haberes dejados de percibir**. Por tanto, en aquellas controversias relacionadas con el seguro social en otras de sus modalidades, este Tribunal vendrá obligado a reconocer que el beneficio recibido en tal concepto no podrá deducirse de la paga atrasada por razón de constituir una fuente colateral independiente al patrono.

Como cuestión de hecho, en la Opinión que hoy emite este Tribunal así lo adelantamos en el contexto del seguro social por jubilación. Particularmente, exponemos que:

> Aunque reconocemos que en el pasado expresamos que los beneficios de seguro social por jubilación se deben considerar para determinar la cuantía concedida por concepto de salarios no devengados, **no ignoramos que tradicionalmente se ha aplicado la doctrina de fuente colateral a otros beneficios recibidos al amparo de legislación social, tal como el seguro social**. Véanse, Berríos v. Eastern Sugar Associates, [infra]; Toro v. Sánchez, [infra].[5]

Como vemos, lo antes expuesto contiene dos (2) premisas principales. La primera, la identificación del precedente de este Tribunal Berríos v. Eastern Sugar Associates, 85 DPR

---

[5](Negrillas suplidas). Íd., pág. 10.

119, 130 (1962),[6] el cual establece que el seguro social **por jubilación** debe descontarse de la cuantía concedida por concepto de salarios no devengados. La segunda, el reconocimiento de que tradicionalmente se ha recurrido a la doctrina de la fuente colateral con el propósito de que el beneficio del seguro social no sea descontado de la paga atrasada. Para esta segunda premisa, la Opinión de este Tribunal se ancla en lo resuelto en Toro v. Sánchez, 131 F. Supp. 2d 195 (D. PR 2001), un caso del Tribunal de Distrito Federal para el Distrito de Puerto Rico. Como veremos, con la adopción de Toro v. Sánchez, supra, adelantamos el descarte de fórmulas anacrónicas y el establecimiento de una nueva corriente doctrinal por parte de este Tribunal al analizar controversias sobre el seguro social y su interrelación con la doctrina de la fuente colateral.

Recientemente, en Santiago Ortiz v. Real Legacy et al., 206 DPR 194 (2021) —precedente en el cual este Tribunal tomó un rumbo correcto en el análisis de controversias relacionadas con la doctrina de la fuente colateral en casos de despidos ilegales— adelantamos el trato que debía recibir el seguro social en este tipo controversias.[7]

---

[6]Como muestra de que en Berrios se trataba del beneficio de seguro social por jubilación, exponemos el siguiente extracto de tal Opinión: "el patrono notificó a Berríos, quien a la [r]azón contaba sesenta y ocho años de edad, que el día último de dicho mes cesaría en el empleo **para que pudiera acogerse a los beneficios para los casos de vejez provistos por la Ley de Seguro Social Federal**". (Negrillas suplidas). Íd., pág. 122.

[7]Destaco que, en este caso, primeramente, aplicamos la doctrina de la fuente colateral de ingresos y,

Específicamente, según lo reconocemos en la <u>Opinión</u> de este Tribunal,[8] en <u>Santiago Ortíz</u> adoptamos lo expresado en <u>Toro v. Sánchez</u>, supra, a los efectos de que un patrono no puede sustraer de la indemnización correspondiente al agraviado lo recibido por concepto de, entre otros, beneficios de legislación social como lo es el seguro social.[9] **Nótese que,**

_____

consecuentemente, precisamos que el pago en concepto de liquidación de vacaciones, el plan de ahorros y el pago de la pensión prematura, no podían catalogarse como salarios descontables al cuantificar el total de la compensación a otorgarse. Íd., pág. 217.

[8]Véase, <u>Opinión</u> de este Tribunal, págs. 7-8.

[9]En lo pertinente, en <u>Santiago Ortiz v. Real Legacy et al.</u>, supra, se adoptó lo siguiente:

> Esta apreciación es similar a las expresiones que el Tribunal de Distrito Federal para el Distrito de Puerto Rico ha esbozado en torno a las deducciones realizadas en escenarios que involucran un despido. En específico, en <u>Toro v. Sánchez</u>, 141 F. Supp. 2d 195, 196 (D. PR 2001), el foro federal en Puerto Rico expresó lo siguiente:
>
> > **Traditionally the rule that collateral benefits are not subtracted from the plaintiff's award of damages has been applied to benefits paid under:** (1) an insurance policy or by a relief association; (2) employment benefits; (3) gratuitous payments; **(4) <u>social legislation benefits such as social security</u>,** welfare, pensions; and (4) benefits received under certain retirement acts. The basic argument advanced for the rule's application is that a tort-feasor should not be allowed to escape the consequences of his wrongful act merely because his/her victim has received a benefit from a collateral source which would constitute a windfall to the defendant wrongdoer. Another argument in its favor is that in many instances the plaintiff has paid for these benefits in the form

**en Toro v. Sánchez, supra, no se condiciona el tipo de beneficio de seguro social que recibió la persona agraviada.**

Ello responde a que el beneficio del seguro social, en sus diversas manifestaciones —ya sea por razón de incapacidad, por jubilación o para sobrevivientes—, no constituye una doble compensación por concepto de trabajo y tampoco se realiza con el fin de liberar de responsabilidad al patrono, ya que su naturaleza es distinta a la paga atrasada adeudada tras el despido. Entiéndase, tal beneficio constituye una fuente colateral de ingresos. Y es que no hay duda de que el recibo del seguro social proviene de una fuente independiente como parte de una política de mejoramiento social en beneficio del Estado de índole distinto a las obligaciones del patrono para con su empleomanía.

Por extensión lógica, independientemente de la razón por la cual se concede el seguro social, este no puede reducirse de la indemnización por concepto de paga atrasada, pues tales beneficios constituyen una fuente colateral que

---

                    of insurance premiums or concessions in
                    the wages he received because of such
                    fringe benefits.

            En consideración a lo anterior entendemos que,
            a pesar de que el Tribunal de Apelaciones
            implementó erróneamente el cálculo matemático
            discutido, sí actuó correctamente al no restar
            las partidas de liquidación por vacaciones, el
            pago por pensión prematura ni del plan de ahorro
            que retiró el peticionario.

(Cita depurada). (Negrillas en el original omitidas y negrillas y énfasis suplidos). Íd., pág. 218.

no puede obrar en beneficio del patrono. Reitero, así lo precisamos en la Opinión de este Tribunal al distinguir el trato que ha recibido el seguro social por jubilación bajo el precedente de Berrios v. Eastern Sugar Associates, supra, y luego adelantando que, a la luz de lo dispuesto en Toro v. Sánchez, supra —según adoptado por este Tribunal en Santiago Ortiz v. Real Legacy et al. y en el caso de autos—, la nueva corriente doctrinal de la fuente colateral impide que los beneficios recibidos al amparo de legislación social, en sus diversas manifestaciones, se descuenten por estos haber sido recibidos de una fuente independiente y ajena a la relación patrono-empleado.[10] En todos estos casos, la doctrina de la fuente colateral impide que los beneficios del seguro social sean deducidos de la compensación por haberes dejados de percibir que le corresponde a quien ha sido despedido en contra de la ley.[11]

---

[10]Nótese que del escolio núm. 4 de la Opinión de este Tribunal colegimos que, por razón de que el caso de Berrios versaba sobre el beneficio de seguro social por jubilación —el cual se recibe por un motivo distinto al de incapacidad— resulta innecesario pautar en estos momentos que el seguro social por jubilación tampoco puede reducirse de la indemnización recibida por este provenir de una fuente colateral.

[11]A modo persuasivo con respecto al hecho de que los beneficios por seguro social no deben tomarse en consideración al calcularse la compensación en concepto de paga atrasada, véase, State ex rel. Stacy v. Batavia Loc. Sch. Dist. Bd. of Edn., 829 N.E.2d 298, 308 (Ohio 2005) (disponiéndose por el Tribunal Supremo del Estado que "the court of appeals did not err in refusing to offset Stacy's Social Security payments from any back-pay award"); Dominguez v. Tom James Co., 113 F.3d 1188, 1191 (11mo Cir. 1997) ("We […] hold that Social Security benefits are not to be deducted from ADEA awards"); Maxfield v. Sinclair Intern., 766 F.2d 788, 795 (3er Cir. 1985) ("Under the collateral

**II**

Por los fundamentos antes expuestos, si bien imparto mi conformidad al acto de justicia social que en esta ocasión dictamina este Tribunal, **insisto que no se justifica brindarle un trato distinto al beneficio del seguro social en sus diversas manifestaciones. No menos importante, reafirmo que en aquellos casos de despidos ilegales en los que se incluya una compensación por haberes dejados de percibir, no se debe efectuar descuento alguno por los ingresos que el empleado o la empleada obtuvo por otros medios mientras duró la cesantía.**

Luis F. Estrella Martínez
Juez Asociado

source rule payments under Social Security, welfare programs, unemployment compensation and similar programs have all been treated as collateral benefits which would not ordinarily be set off against damages awarded"); Smith v. United States, 587 F.2d 1013, 1016 (3er Cir. 1978) ("Social Security benefits should not be deducted from a recovery under the Federal Tort Claims Act"); Manko v. U.S., 636 F. Supp. 1419, 1451 (W.D. Mo. 1986) ("the Social Security retirement benefits received by plaintiff should not be deducted under Missouri's collateral source rule", así validado por Manko v. U.S., 830 F.2d 831, 837 (8vo Cir. 1987)); Coates v. U.S., 612 F.Supp. 592, 598 (D.C. Ill., 1985) ("the Social Security [survivor] payments made to Rosemary Coates and her children should not offset the damage award made to them in this Order", citado con aprobación en Molzof v. U.S., 6 F.3d 461, 466 (7mo Cir. 1993)).